## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON JOYCE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware Limited Liability Company, and Does 1 through 60,<br>    Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

Plaintiff SHARON JOYCE ("Plaintiff") alleges as follows against Defendant JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware Limited Liability Company ("JLRNA"), on information and belief, formed after an inquiry reasonable under the circumstances:

### PARTIES

1. Plaintiff is an individual residing with her domicile in San Diego County, State of California.

2. Defendant JLRNA is and at all relevant times was a Delaware Limited Liability Company authorized to do business and conducting business throughout the state of California directly or via its authorized sales agents and authorized repair facilities. JLRNA's principal place of business is 100 Jaguar Land Rover Way, Mahwah, New Jersey 07495. JLRNA is a wholly owned subsidiary of Jaguar Land Rover Holdings Limited. Jaguar Land Rover Holdings Limited is a citizen of

England with its principal place of business in Coventry, England. JLRNA's owners/members are citizens of New Jersey.

3.      JLRNA is engaged in the manufacture, sale, and/or distribution of motor vehicles and related services. Additionally, JLRNA engages in the marketing, supplying, and selling of written warranties to the public at large through a broad network of authorized sales facilities across the United States.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d)(2), which provides for original jurisdiction in the federal courts over any class action in which a member of the plaintiff class is a citizen of a State different from the State citizenship of any defendant, and the amount in controversy exceeds the sum of $5,000,000.00 exclusive of interests and costs. Here, there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs and there is minimal diversity between Plaintiff and Defendant. Additionally, this Court also has supplemental jurisdiction over the set forth state law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over JLRNA because JLRNA is both headquartered in and conducts substantial business in this judicial district, thereby purposely and intentionally availing itself of the benefits and protections of

this district when placing motor vehicles into the stream of commerce within California and the United States. Personal jurisdiction over JLRNA is foreseeable, fair, and proper.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. JLRNA is both headquartered in and transacts substantial business in this district with regularity and it is subject to personal jurisdiction in this district. Additionally, JLRNA advertises and markets its products in this district, and has received substantial revenue and profits from its sales and leasing of motor vehicles in this district. Thus, a substantial part of the events and/or omissions giving rise to the present claims occurred in within this district. Therefore, venue is proper.

## **FACTUAL ALLEGATIONS**

7.      Plaintiff SHARON JOYCE brings this action individually for herself and on behalf of all persons who purchased or leased in California, certain vehicles equipped with uniform and uniformly defective battery systems manufactured, distributed, warranted, marketed and/or sold or leased by JLRNA as described herein ("Class Vehicles"), and for which JLRNA issued a warranty.

8.      All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

9.      On or around July 29, 2019, Plaintiff purchased a Class Vehicle—a new 2020 model year Jaguar I-Pace, VIN No.: SADHC2S10L1F80769 ("Vehicle") from

Hoehn Jaguar Land Rover, Inc., in Carlsbad, California. At purchase, the Vehicle had 26 miles on its odometer. Plaintiff entered this sale agreement in the State of California.

10.    Defendant JLRNA expressly warranted that the Vehicle would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the Vehicle had defects, Defendant JLRNA would repair the defects.

11.    Defendant JLRNA impliedly warranted that the Vehicle would be of the same quality as similar vehicles sold in the trade (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the Vehicle would be fit for the ordinary purposes for which similar vehicles are used (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the vehicle would measure up to the promises and facts stated in its labeling (that it would charge and operate properly and fully).

12.    The Vehicle was delivered to Plaintiff with serious defects and nonconformities under warranty, which have not been repaired.

13.    On or about September 3, 2019, when presenting the Vehicle for various defects, the authorized repair facility noted on the repair order that during the pre-delivery inspection, Plaintiff's Vehicle displayed reduced electric vehicle range. There was no campaign or repair procedure available to repair the defect. No

repair was made at this time.

14.    On or about October 18, 2019, when presenting the Vehicle for various defects, the authorized repair facility advised and performed Campaign H247 was available for the existing defect of the displayed warning for reduced electric vehicle range.    H247 was replaced the ECU module.    According to Jaguar's records, Campaign H247 was suspended on or about August 2, 2019, to allow for further investigations to be undertaken.

15.    On or about January 9, 2020, Jaguar issued Campaign H264.    The purpose of this software enhancement was to deliver up to 12 miles of additional real-world range on a 'full charge."    Among other possible changes, Campaign H264 changed the torque distribution of the permanent all-wheel-drive system to deliver greater efficiency when driving in ECO mode.    H264 also made refinements to the thermal management control system to make the active radiator vanes close more often to enhance aerodynamics.    H264 changed the battery to run to a lower state of charge than previously without affecting drivability, durability, or performance. And, H264 recalibrated the Regenerative Braking system to harvest energy more efficiently when the battery is in a high state of charge and recover more energy at low speeds.

16.    On or about February 5, 2020, Jaguar's authorized repair facility performed H264 on Plaintiff's Vehicle.

17.    On or about February 9, 2021, Plaintiff's Vehicle experienced a high voltage battery failure. The Vehicle would not start and the screens would not come on. The Vehicle had to be towed into Jaguar's authorized repair facility for repair. The Vehicle exhibited Fault POABF-12 in the battery energy control module and multiple software systems were updated to address the defects, including updates to the BECM, BCCM, Epic A, Epic B, and Epic C software modules.

18.    On or about April 28, 2023, Plaintiff's Vehicle experienced another high voltage battery failure leaving her stranded in the middle of a street and blocking people from exiting their parking spaces. The Vehicle displayed a battery fault light, other warning lights, then died. The Vehicle was towed in and both the startup battery and secondary battery were replaced.

19.    Plaintiff delivered the Vehicle to JLRNA authorized repair facilities, for repair of defects in the battery system under the written warranty. Plaintiff was informed that the Vehicle had been repaired.

20.    Notwithstanding all the presentations, the Vehicle still had substantially impairing defects.

21.    On or about July 18, 2023, JLRNA distributed to Class Vehicle owners, a consumer notification of Safety Recall H441: Battery Energy Control Module (BECM) software update. According to JLRNA's recall, "the high-voltage battery may overheat which increases the risk of a fire and occupant injury and/or injury to

6

persons outside the Vehicle, as well as property damage." The notice stated that warning signs include battery fault messages, popping sounds, burning smells, smoke, and flames. The recall notice "remedy" includes a software update that is intended to "monitor the battery pack assembly operational status that indicates where the battery contains conditions which may lead to overheating." The software update is intended to provide better warning of potential overheating and fire. It will also limit the battery charging capacity to 75%. Customers are recommended to park and charge their vehicles outside. Further, until the recall is completed customers are advised not to charge beyond 75% capacity.

22.    On or about August 3, 2023, Plaintiff received a letter from JLRNA notifying her of Safety Recall H441. A true and correct copy of the recall notification letter is attached as **Exhibit 1**.

23.    This action is brought to remedy violations of law in connection with JLRNA's manufacture, distribution, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' battery systems have a serious manufacturing and/or materials defect caused by thermal overload leading the battery systems in Class Vehicles to be unreasonably dangerous. JLRNA has no fix for this defect.  Charging the high voltage battery can result in a fire and lead to significant personal injury.

24.    According to JLRNA's recall, the battery system is manufactured in

substantially the same manner in all Class Vehicles and does not vary in its construction, operation, or control. JLRNA's 573 Recall Report to the National Highway Traffic Safety Administration estimates 100% of Class Vehicles are affected.

25.    Plaintiff believes the unreasonably dangerous and defective battery system is dangerous to her health and safety, the health and safety of all others who may ride in the Vehicle, and to other motorists.

26.    Prior to the manufacture and sale of the Class Vehicles, Defendant knew of the battery system defect through internal sources, testing, and consumer complaints, including specific instances of potential Class Members bringing Class Vehicles to JLRNA for inspection and repair. Recalls are undertaken after numerous field failures and feedback to the auto manufacturer of such failures. Auto manufacturers and distributors, such as JLRNA, collect data such as field reports, technical data, warranty repair statistics, and other feedback from the field.  From this information and data JLRNA is made aware of failures that are occurring. JLRNA then undertakes analysis of the data for the failure mode and ultimately attempts to engineer a fix for the failure mode.  JLRNA also undertakes the process of creating the recall, having it analyzed and double checked by various departments, managing agents, and corporate executives, and then publishing the recall.  In this manner JLRNA is aware of the failures long before the actual recall is issued because

of the logistics and processes necessary simply to approve and publish a recall. JLRNA therefore knew before sale of the subject Vehicle and other Class Vehicles of the inherent and existing dangerous defect. Despite this knowledge, JLRNA failed to disclose and actively concealed the battery system defect from Plaintiff and other potential Class Members and from the public. Instead, JLRNA continued to market to potential Class Members to purchase the Class Vehicles without informing potential Class Members of the underlying, and extremely dangerous, manufacturing defect present in the Class Vehicles' battery systems. JLRNA has failed to remedy the defect to date. Indeed, JLRNA and its authorized dealers are still offering Class Vehicles with the existing defective battery systems for sale or lease to the general public and unsuspecting consumers.

27.    When Plaintiff and other potential Class Members complained about the defective and dangerous battery system, JLRNA failed to remedy the issue and informed individual potential Class Members that there was no fix. Instead, potential Class Members, including Plaintiff: (a) were told not to charge their vehicles above 75%, (b) not to park inside, (c) not to charge inside, (d) and to have a recall performed that would not prevent a fire, but would, at best, predict a fire, and would limit charge capacity to 75%. Based on the manner and timing in which recalls came into existence, JLRNA knew of this problem, its pervasiveness, and lack of a proper fix for a significant amount of time before notice was given to consumers on or about

July 18, 2023 and while Class Vehicles were being sold and leased to the general public. JLRNA knew of these issues because of the very nature of the recall but nevertheless continued selling Class Vehicles to potential Class Members like Plaintiff.

28.    The defects described herein violate the express written warranties issued by JLRNA, as well as the implied warranty of merchantability.

29.    Although Plaintiff and other potential Class Members brought the Vehicle to JLRNA for repair, JLRNA failed to and/or refused to repair the defect for which it stated there was no fix available. Under these circumstances any additional efforts by Plaintiff and the potential Class Members to have the Class Vehicles repaired would have been futile as JLRNA openly admitted that it did not have any way to repair the defective battery system.

30.    Plaintiff and potential Class Members provided JLRNA sufficient opportunity to repair the Class Vehicles.

31.    As a result of JLRNA's conduct, Plaintiff and potential Class Members were harmed, and suffered actual damages in that the Class Vehicles have manifested and continue to manifest the battery system defect. JLRNA has not provided a permanent or any remedy for this defect. Plaintiff and potential Class Members have justifiably lost confidence in the Class Vehicles' safety and reliability. The battery system defect substantially impairs the value of the Class

Vehicles owned by Plaintiff and the potential Class Members.

32.    JLRNA can issue a "stop sale" order to all its authorized JLRNA dealerships by virtue of its dealer agreements with said dealers.  Said "stop sale" clauses are a normal and standard clause in auto manufacturer and dealership agreements. JLRNA has issued stop sale orders in the past.

33.    Despite its knowledge of the battery system defect and ability to issue a stop sale order, JLRNA rather continues to market, advertise, and promote the defective vehicles subject to the recall.  Attached as **Exhibit 2** is a true and correct printout of JLRNA of North America's website which promotes, advertises, and markets the defective vehicles without any mention of the recall or existing defects. JLRNA's website not only markets, advertises, and promotes said vehicles but allows consumers, potential class members to, "build" one's own vehicle and obtain a price quote and referral to an authorized dealership. The website continues to promote the 246-mile range on full charge despite the recommendation that vehicles that have not had the recall performed cannot be safely charged beyond 75% and that vehicles that have had the recall performed cannot be charged beyond 75% at all. The fact that all I-Pace vehicles have a fire risk and are subject to the recall is not disclosed at all.

34.    Despite its knowledge of the battery system defect and ability to issue a stop sale order, JLRNA's authorized dealerships continue to market, sell, and lease

vehicles affected with the defect today. JLRNA has not issued or made effective a "stop sale order" available to JLRNA dealerships to prohibit the sale of Class Vehicles.

35.     Attached hereto as **Exhibit 3** are printouts from various JLRNA authorized dealership webpages listing vehicles for sale and lease by JLRNA with VIN numbers attributable to Class Vehicles containing the battery system defect.

## The Battery System Defect

36.     On June 20, 2019, JLRNA received its first report of a battery fire in a Class Vehicle. Additional battery fires were reported on July 6, 2020, August 31, 2021, August 31, 2021, November 11, 2021, December 20, 2021, June 22, 2022, and May 3, 2023.

37.     The following NHTSA consumer complaints were received regarding Class Vehicles:

> November 3, 2022
> NHTSA ID Number: 11492129
> Incident Date September 28, 2022
> Consumer Location JUPITER, FL
> Vehicle Identification Number SADHD2S15K1****
> The BCCM in a high number of 2019 Jaguar iPace cars are going bad. The BCCM is the main charging component of the vehicle that controls the electrical system and creates a huge hazard and series of malfunctions when it goes bad. It renders the car immobile and you can not charge it. The dealerships and Jaguar North America refuse to recognize this. There is a significant backorder of these parts because of this issue and the dealership mentioned to me that they see this issue ALL THE TIME. Jaguar should be recalling this part for those of us, like myself, whose car is out of warranty.

October 14, 2022
NHTSA ID Number: 11489256
Incident Date May 2, 2019
Consumer Location LEXINGTON, KY
Vehicle Identification Number SADHD2S17K1****
Since April of this year, the car has consistently had problems! A few
months ago, it started turning off suddenly!! Yes, suddenly even while
driving! This was very alarming. I took it to the dealer in Cincinnati
where it stayed for almost a month to be fixed! Then towards the end
of August, it started running out of charge / not charging after driving
a few miles with a dashboard warning to "stop immediately". I again
shipped it to the dealer in Cincinnati where it has been there since then
(over 6 weeks now!) Talking to the dealer, they do not seem to be
certain of what happened and keep changing things. I am not sure if I
feel safe driving such a car or owning it beyond the warranty

May 12, 2022
NHTSA ID Number: 11464375
Incident Date May 11, 2022
Consumer Location PALM SPRINGS, CA
Vehicle Identification Number SADHD2S13K1****
I tried to move my Jaguar I-Pace car yesterday - totally unresponsive.
Finally got a door to open; dash said the car had zero miles (it had 140
available when last shut off). Then got a "Charging System Fault"
message. Dash info kept turning off. Car won't accept electricity to
charge, charging panel lights kept flashing, then all the doors locked
and the alarm went off, with no way to turn it off as the key fob didn't
work. When I googled "charge system fault" it is a common problem
causing major headaches. It happened to a neighbor too; another I-Pace,
different year! This needs to be a recall so Jaguar will address this issue
before their cars die, not after. Per the internet, Jaguar is sometimes
taking weeks to fix this which is unacceptable.

February 18, 2022
NHTSA ID Number: 11452901
Incident Date February 18, 2022
Consumer Location BETHESDA, MD
Vehicle Identification Number SADHD2S18K1****
35mph limit road, moderate traffic, speed of 30-35mph suddenly car

shows an error message on screen with regards to electrical fault of traction battery and reduced feel of brakes. On a contrary, brakes became extremely hard and unresponsive (zero braking efficiency) - car moving 30mph, no change in forward motion (minor jitter on the steering wheel), barely managed to change lane to avoid collision. If right lane would be occupied, that would be a certain collision with a car in front of me as I would have no place to bring the car to safety. Brake message cleared when the car stopped.

April 22, 2021
NHTSA ID Number: 11413407
Incident Date February 25, 2021
Consumer Location DANA POINT, CA
Vehicle Identification Number SADHB2S15K1****
BRAKES FAILED, AND BATTERY DIED AT FULL SPEED IN A 35 MILE ZONE, LUCKILY SLIGHT UP SLOPE AND CAR CAME TO A HALT. COMPLETE BATTERY AND BRAKE FAILURE, THE WHOLE SYSTEM SHUT DOWN. NO ANSWERS FROM JAGUAR, JUST A BATTERY REPLACEMENT. AGAIN, BRAKES FAILED AT FULL SPEED!

April 20, 2021
NHTSA ID Number: 11413004
Incident Date June 19, 2019
Consumer Location SANTA FE, NM
Vehicle Identification Number SADHD2S16K1****
EV BATTERY CAUGHT FIRE AFTER VEHICLE HAD BEEN PARKED FOR 5 DAYS IN AN INTERIOR LEVEL OF AN OPEN AIR PARKING GARAGE. VEHICLE WAS A TOTAL LOSS.

March 6, 2021
NHTSA ID Number: 11399556
Incident Date November 17, 2020
Consumer Location VESTAVIA, AL
Vehicle Identification Number SADHD2S10K1****
ELECTRICAL MULTI-SYSTEM FAILURE INCLUDING BRAKING WHILE VEHICLE IN MOTION. BRAKES FAILED AND STEERING AFFECTED. ENTIRE WIRING HARNESS DEFECTIVE ON VEHICLE PER MANUFACTURER.

February 5, 2021
NHTSA ID Number: 11394809
Incident Date February 4, 2021
Consumer Location AUBURN, WA
Vehicle Identification Number SADHC2S18K1****
UPON DRIVING OUT OF OUR HOUSE TO TAKE KIDS TO
SCHOOL THERE WAS AN ERROR MESSAGE ON DISPLAY.
PRIOR TO THIS AN UPDATE WAS DONE TO THE VEHICLE.
PRIOR TO UPDATE THE VEHICLE CHARGED BATTERY WITH
A RANGE OF 234. AFTER THE 'UPDATE' WAS DONE 2 DAYS
AGO THE BATTERY DID NOT FULLY CHARGE DESPITE
BEING ON A SUPERCHARGER OVER 12 HOURS. THE CAR
CHARGED ONLY TO ABOUT 160 AND THEN DISPLAYED THIS
MESSAGE ON THE DISPLAY: VEHICLE NOT FULLY
CHARGED. POWER CUT DETECTED.

March 16, 2020
NHTSA ID Number: 11318305
Incident Date March 6, 2020
Consumer Location WAHIAWA, HI
Vehicle Identification Number SADHD2S17K1****
2195 MILES, AND ONLY DRIVING IT FOR 60 DAYS.
THANKFULLY I WAS DRIVING SLOWLY, WHEN THE CAR'S
BRAKES STOPPED WORKING, THE CAR STARTED
SHUDDERING VIOLENTLY. WHEN FINALLY WAS ABLE TO
STOP CAR, THE I-PACE WOULD NOT GO INTO OR OUT OF
GEAR, AND THE EMERGENCY PARKING BRAKE WOULD NOT
RELEASE. INCREDIBLY SCARY. I CAN ONLY IMAGINE IF I
HAD BEEN DRIVING ON THE HIGHWAY WHEN THE BRAKES
FAILED.

November 30, 2019
NHTSA ID Number: 11282985
Incident Date November 22, 2019
Consumer Location ENCINO, CA
Vehicle Identification Number SADHC2S12K1****
MY 4-MONTH-OLD CAR'S BRAKES FAILED TO OPERATE
WHILE TRAVELING AT 60MPH IN THE FAST LANE OF THE
FREEWAY. FORTUNATELY I WAS ABLE TO TURN ON

HAZARD LIGHTS AND COAST ACROSS THE FREEWAY TO THE HARD SHOULDER WHERE THE CAR ROLLED TO A STOP. THE PROBLEMS BEGAN EARLIER IN THE DAY WHEN THE CAR REPORTED "REDUCED BRAKE PEDAL FEEL, OK TO DRIVE WITH CAUTION. LATER IN THE DAY A MESSAGE REPORTED "ASPC NOT AVAILABLE." AT THIS POINT I CALLED THE DEALERSHIP WHO ADVISED US TO BRING IT IN THE NEXT DAY. SOME TIME AFTER THIS ALERT WE RECEIVED A SERIES OF RAPID MESSAGES - "TRACTION CONTROL OFFLINE" "EMERGENCY BRAKING ASSIST OFFLINE - OK TO DRIVE WITH CAUTION" AND SEVERAL OTHERS WHICH I DON'T RECALL. THE FINAL WARNING WAS "GEAR BOX FAULT" - AT THIS POINT I THOUGHT IT WISE TO PULL OVER, BUT WHEN I TRIED TO USE THE BRAKES THERE WAS NO RESPONSE AT ALL. JUST A GRINDING, CRUNCHING FEELING UNDER THE BRAKE PEDAL. I TURNED ON HAZARD LIGHTS AND COASTED TO THE RIGHT LANE THROUGH FAST-MOVING TRAFFIC, AND THEN ONTO THE HARD SHOULDER. I BELIEVE THE REGENERATIVE BRAKING SYSTEM WAS WORKING AND THIS MANAGED TO SLOW THE VEHICLE TO A STOP. ON THE HARD SHOULDER I TURNED THE CAR OFF AND THEN ON AGAIN, BUT THE BRAKE PEDAL STILL HAD A GRINDING, CRUNCHING FEELING AND WOULD NOT OPERATE. THE PARK/DRIVE/NEUTRAL BUTTONS JUST FLASHED IF YOU PRESSED THEM. I WAS IN THE CAR WITH TWO CHILDREN UNDER 6 AND MY WIFE. WE WERE VERY CONCERNED AS THERE WAS VERY LITTLE SPACE AT THE SIDE OF THE ROAD AND NO WAY TO GET OFF THE FREEWAY. WE PRESSED THE CAR'S SOS BUTTON AND THE WOMAN ADVISED WE CALL 911 TO BE RESCUED BY THE POLICE. JAGUAR ROADSIDE ASSISTANCE SENT A TOW TRUCK TO TOW THE VEHICLE TO JAGUAR MONTEREY FOR REPAIR. A FEW DAYS LATER WE WERE TOLD THE CAR'S "POWER DISTRIBUTION BOX" HAD FAILED. THE CAR HAD NO OUTSTANDING RECALLS. WHEN PURCHASED IT HAD THE "ASPC NOT AVAILABLE" ERROR AND HAD TO GO BACK TO DEALER FOR REPAIR.

August 19, 2019
NHTSA ID Number: 11245059

16

Incident Date August 17, 2019
Consumer Location SPRING, TX
Vehicle Identification Number SADHD2S10K1****
SINCE I PURCHASED JAGUAR I-PACE I BEEN HAVING
BATTERY FAULT ISSUES WHICH NOW STANDARD ME WITH
THE VEHICLE. I RECEIVE BATTERY FAULT ERRORS AND
THE CAR STOPS WORKING. THE CAR STAYS ON BUT WHEN
YOU PUT THE CAR IN DRIVE OR REVERSE AND HIT THE GAS
PEDAL NOTHING HAPPENS. ITS VERY DANGEROUS AS THE
CAR SHOULD NOT JUST STOP FROM DRIVING WHEN YOU
HIT THE GAS. WHEN THIS HAPPENS THE CAR IS WORKING
IN TERMS OF AIR CONDITION, STEERING WHEEL ETC....
ALSO THERE IS CONSTANT ERRORS WHEN IT COMES TO
BLIND SPOT ALERT. THE VEHICLE TELLS YOU THEY ARE
DISABLED, IF YOU RESTART THE VEHICLE IT RESENTS BUT
COMES BACK. ALSO THE DASHBOARD SOMETIMES JUST
GOES BLANK AND WILL COME BACK A FEW MINUTES
LATER. ITS SCARY AS YOU SUDDENLY DONT KNOW HOW
FAST YOUR GOING OR WHAT IS GOING ON TILL THE SCREEN
COMES BACK FEW SECONDS LATER. THE VEHICLE HAS
BEEN AT THE DEALER FEW TIMES BUT STILL HAVING THE
SAME ISSUE. ITS CURRENTLY AT THE DEALER AGAIN TO BE
FIXED. THIS VEHICLE IS 100% ELECTRIC AND I'M
ATTACHING SOME PICTURES OF THE ERRORS.

June 4, 2019
NHTSA ID Number: 11217795
Incident Date June 3, 2019
Consumer Location SALINAS, CA
Vehicle Identification Number N/A

May 17, 2021
NHTSA ID Number: 11417426
Incident Date May 16, 2021
Consumer Location PALM SPRINGS, CA
Vehicle Identification Number SADHD2S15L1****
Was driving vehicle downhill on a small hill in Palm Springs when
multiple error messages appeared in rapid succession on the
information display, including 'traction battery fault - safe to drive with
caution'. This was immediately followed by "pull over and stop the car"

but before I had the chance to do so ALL the systems in the car ceased to operate and all electrical systems shut down. The breaks would not work, the steering would not work. I was still traveling down hill and unable to stop the car. The car continued for approximately 1/2 a mile and went through two stop signs. Fortunately it was early morning and there were no other vehicles, or pedestrians around, if there had been I would have been unable to avoid hitting them. My safety and that of any other driver or pedestrian who could have been on the road was seriously compromised. The car finally came to rest towards the bottom of the hill and I was able to exit the vehicle. Had this happened if I was traveling at speed on a freeway, I hate to contemplate the consequences. This same problem happened about 4 weeks ago, but fortunately the total shut down occurred while the car was stationery in my garage. The dealership towed the truck then and returned it to me a few days later, saying they had resolved all the issues - but clearly not. I have no confidence in the safety of this car. The dealer is collecting the car today to return it to the Jaguar dealership in Rancho Mirage.

July 31, 2023
NHTSA ID Number: 11535550
Incident Date July 29, 2023
Consumer Location ELK GROVE VILLAGE, IL
Vehicle Identification Number SADHD2S11N1****
The contact owns a 2022 Jaguar I-Pace. The contact stated that the vehicle was taken to the dealer because the vehicle failed to charge as needed. The contact then received recall notification of NHTSA Campaign Number: 23V369000 (Electrical System). The vehicle was towed to the dealer where the recall was completed; however, the contact stated that while charging the vehicle, the garage and the vehicle overheated. The contact stated that the vehicle was extremely hot near the high voltage battery area. The contact was concerned that issue could cause a fire. No warning lights were illuminated. The vehicle was taken to the dealer however, the failure could not be duplicated. The vehicle was not repaired. The manufacturer was notified of the failure and the contact was provided a case number. No further assistance was provided. The failure mileage was approximately 27,000.

September 12, 2022
NHTSA ID Number: 11484095

Incident Date September 11, 2022
Consumer Location LOMA LINDA, CA
Vehicle Identification Number SADHD2S17N1****
While driving a 2022 Jaguar I-Pace for 60 miles, the car came to a stop sign near its destination. At this point, the car would stutter and shake when attempting to accelerate, simultaneously the car would roll back since there was a slight decline in the road. Brakes were full functional throughout this time. However, no warnings were shown during the occurrence and by the time the driver was able to apply the brakes, the car had already rolled back approximately 2 feet. After this time, the car accelerated but the issue repeated itself at the next stop sign and again at the destination. While approaching a drive way at the destination with a 10-15% grade, the vehicle completely cut power halfway up the drive way. At this time the car rolled back into the street, approximately 6 feet, before the driver could react and apply brakes. Had there been someone standing or walking on the side walk at the end of the driveway, it would have resulted in severe injuries or even death. At the time, no vehicles were on the road, however if there were, the vehicle would have rolled into traffic before the driver is able to react. Power was regained approximately 10 seconds after rolling backwards. The vehicle was then parked curbside for approximately 4 hours. Upon starting and driving the vehicle again, the same issues with stuttering/shaking when accelerating from a standstill and sudden loss of power with any incline continued. The next day, the vehicle had to be towed to a Jaguar Land Rover dealer for investigation. No previous repair work or modifications have been done to the vehicle. All care and maintenance had been done according to the manual. Battery was also charged to 80% as recommended by the manual for optimal battery life. At the time the issues had started, the vehicle showed 48% battery life remaining. No previous issues or problems had occurred with the vehicle, no recalls or TSB in place as of 9/12/22 for the 2022 model year.

March 6, 2022
NHTSA ID Number: 11455400
Incident Date December 6, 2021
Consumer Location TROY, MI
Vehicle Identification Number SADHD2S10N1****
This is an EV. Four times car stopped abruptly in the middle of the freeway. Everything was brought to the notice of dealership but still

kept happening. This car has become a death trap for me and my family. I need immediate resolution for this case before something tragic happens.

38.    JLRNA released manufacturer communications related to the high voltage battery on February 12, 2019; February 21, 2019; March 6, 2019; March 12, 2019; May 3, 2019; November 12, 2020; February 18, 2021; October 13, 2021; and March 13, 2023.

39.    On March 6, 2019, JLRNA released a service bulletin due to the high voltage auxiliary components failing with a short circuit, blowing fuses in the high voltage junction box, and blowing fuses in the battery energy module.

40.    The following slide was shared during a shop foreman conference call put on by JLRNA in 2019:

**Latest Vehicle Concern Fixes**



| Cell Module Imbalance | 19 & 20MY I-PACE |
|---|---|
| **Customer Voice:**<br>• Customer may experience various warnings & symptoms i.e. difficulties charging the vehicle, a Traction Battery Warning, or inability to start the vehicle, Reduced Performance Warning.<br><br>**Technical Description:**<br>• Various codes for Hybrid/EV Battery Cell Module XX- Signal failure.<br><br>**Status:**<br>• Run 40D2 test in the BECM. BECM ECU Function- HV Hot Spot Cell Module Data<br>• Results do not populate easily in the session file, take screen shots of the 40D2 test<br>• 40D2 Test will ask technicians to charge the vehicle for 10 minutes. The test will still run if you are unable to charge the vehicle<br>• Prior to case submission, please have you designated EVSAP pressure the HV Battery | |

41.    The following power point slide was provided by JLRNA to NHTSA

in 2020:

### TECHNICAL TOPICS
POWERTRAIN



| Water Pump P2600-13 Stored in the PCM | 19/20MY I-PACE |
|---|---|
| Customer Voice:<br>– Vehicle cannot be put into gear out of park and/or an HV Battery warning is displayed on the instrument cluster.<br><br>Technical Description:<br>– P2600-13 "Coolant Pump "A" Control Circuit Open stored in the PCM.<br><br>Status:<br>– Please follow TOPIx Guidance as well as any guided flows available in PATHFINDER.<br>– Raise a TA if you require additional assistance.<br>– If diagnosis results is replacement of the Water Pump, please raise an EPQR for parts return. | |

PRINTED COPIES ARE UNCONTROLLED                                    32

42. JLRNA did not initiate an investigation until February 2, 2022. JLRNA's investigation is incomplete. JLRNA could not determine an endpoint in affected vehicles.

43. On May 18, 2023, JLRNA determined that it would conduct a recall of all I-Pace vehicles manufactured to date: all 2019-2024 Jaguar I-Pace vehicles ("Class Vehicles"). JLRNA's 573 report indicates that of the 6,422 potentially involved vehicles, 100% are estimated to have the defect, reported as: "Vehicles have experienced thermal overload which may show as smoke or fire that may occur underneath the vehicle where high voltage traction battery is located. Investigations are continuing."

44. As stated in JLRNA's recall, owners of the Class Vehicles were at risk

of "A vehicle thermal overload condition such as fire or smoke can result in increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage."

45.    The recall does not fix the defect. The recall simply provides software to anticipate when the battery with catch fire. The recall will also limit the charging capacity to 75%. Class Vehicles cannot be parked or charged inside before or after having the recall performed. The recall anticipates that JLRNA's dealers may replace high voltage batteries "if necessary" but fails to indicate what would render replacement necessary. Moreover, since the recall applies to 2024 vehicles that have not yet been sold or manufactured and specifically acknowledges that no endpoint has been identified, there is no reason to believe that a replacement battery will be less dangerous.

## CLASS ALLEGATIONS

46.    Plaintiff brings this class action on behalf of herself and on behalf of the Class Members. Plaintiff is informed and believes that the Class Vehicles are dangerous to drive and put drivers, passengers, and other motorists at risk of serious injury or death.

47.    Plaintiff brings this lawsuit as a class action on behalf of herself and similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

22

48.     Plaintiff brings this class action on behalf of herself and all other

similarly situated members of a proposed statewide class ("Class"), defined as

follows:

> **All persons or entities in California who are current or
> former owners and/or lessees of 2019-2024 Jaguar I-
> Pace vehicles, and which were bought or used
> primarily for personal, family, or household purposes
> or bought or used primarily for business purposes by
> a person, including a partnership, limited liability
> company, corporation, association, or any other legal
> entity, to which not more than five motor vehicles are
> registered in California ("Class Members").**

49.     Excluded from the Class are: (1) JLRNA, any affiliated parent or

sister company, any entity or division in which JLRNA has a controlling interest,

its legal representatives, officers, directors, assigns, and successors; (2) the Judge

to whom this case is assigned and the Judge's staff; (3) governmental entities; (4)

persons or entities with pending litigation against JLRNA related to a Class

Vehicle; and (5) claims for personal injuries resulting from the facts alleged herein.

Plaintiffs reserve the right to amend the Class definitions if discovery and further

investigation reveal that the Class should be expanded, divided into subclass, or

modified in any other way.

50.     Plaintiff reserves the right to amend the Class, and to add subclasses, if

discovery and further investigation reveals such action is warranted.

51.    **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, Plaintiff believes, and on that basis alleges, that thousands of Class Vehicles have been sold and leased in California. Therefore, the number of Class Members is great enough that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in JLRNA's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of various states.

52.    **Typicality:** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, acquired for value (in Plaintiff's and some potential Class Members' case purchased, in other potential Class Members' case leased) a Class Vehicle designed, manufactured, and distributed by JLRNA in which the battery system was defective and there has been no remedy made available. The representative Plaintiff, like all potential Class Members, has been damaged by Defendant's misconduct, and is forced to own an unsafe and dangerous vehicle. Furthermore, the factual bases of Defendant's misconduct are common to all potential Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all potential Class Members, including Plaintiff.

53.    No violations alleged in this complaint are contingent on any individualized interaction of any kind between potential Class Members and JLRNA. Rather, all claims in this matter arise from the identical acts, omissions, concealments, and representations of JLRNA.

54.    **Existence and Predominance of Common Questions of Fact and Law:** There are common questions of law and fact as to the potential Class Members that predominate over questions affecting only individual members, including but not limited to:

   a.  Whether JLRNA engaged in unlawful, unfair, or deceptive business practices in selling Class Vehicles to Plaintiff and other potential Class Members;

   b.  Whether JLRNA made false misrepresentations or omitted and concealed material facts with respect to the Class Vehicles it sold to potential Class Members;

   c.  Whether the Class Vehicles and their battery systems are defectively designed or contain defective workmanship or defective materials and are manufactured such that they are not suitable for their intended use or were not of similar quality to other vehicles in the trade;

   d.  Whether the fact that the Class Vehicles suffer from a battery system defect would be considered material by a reasonable consumer;

   e.  Whether the fact that the Class Vehicles suffer from a defect that could cause fire or injury would be considered material by a reasonable consumer;

   f.  Whether JLRNA profited from the sale of Class Vehicles containing the battery system defect;

g. Whether JLRNA was aware of the battery system defect before the Class Vehicles were sold to potential Class Members;

h. Whether JLRNA continues to sell Class Vehicles to consumers after becoming aware of the battery system defect;

i. Whether JLRNA violated California Business and Professions code Section 17200, et seq.;

j. Whether JLRNA breached the express warranty it provided to potential Class Members;

k. Whether JLRNA breached the implied warranty provided to potential Class Members;

l. Whether Plaintiff and potential Class Members are entitled to equitable relief; and

m. Whether JLRNA's unlawful, unfair and/or deceptive practices harmed Plaintiff and potential Class Members.

55.    Plaintiff's claims are not only typical of all potential Class Members, but they are also identical.

56.    All of Plaintiff's claims and all potential Class Members' claims are based on the exact same legal theories. Plaintiff's damages also mirror the damages suffered by all potential Class Members—viz., an injunction barring further sales of vehicles with the battery system defect, and monetary damages in the form of a buyback of the Class Vehicles. Further, Plaintiff has no interest antagonistic to, or in conflict with, those of the Class.

57.    **<u>Adequate Representation:</u>** Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member. Plaintiff has retained

26

attorneys experienced in the prosecution of class actions and consumer claims similar to the present matter. Plaintiff intends to prosecute this action vigorously.

58.    **Predominance and Superiority:** Plaintiff and the potential Class Members have all suffered and will continue to suffer harm. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most potential Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual potential Class Members' claims, it is likely that only a few potential Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, potential Class Members will continue to incur damages, future consumers will purchase defective vehicles, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

59.    In sum, Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent herself and the class, common questions will predominate, and there will be no unusual manageability issues.

## FIRST COUNT
### Violation of the Consumer Legal Remedies Act – Injunctive Relief
### (On Behalf of Plaintiff and the Class)

60.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

61.    Plaintiff brings this cause of action on behalf of herself and on behalf of the potential Class Members.

62.    Defendant JLRNA is a "Person" pursuant to California Civil Code section 1761(c).

63.    Plaintiff and potential Class Members are "consumers" pursuant to California Civil Code section 1761(d).

64.    The purchases and leases of Class Vehicles and the warranties issued to Plaintiff and potential Class Members constitute transactions as defined by California Civil Code section 1761(e).

65.    The Class Vehicles and warranties constitute "goods" or "services" as defined by California Civil Code sections 1761(a) and (b).

66.    Plaintiffs and potential Class Members purchased or leased the Class Vehicles and warranties primarily for personal, family, and household purposes as set forth in California Civil Code section 1761(d).

67.    JLRNA's misrepresentations, active concealment, failure to disclose,

and omissions regarding the Class Vehicles and violated the California Consumer

Legal Remedies Act, codified at California Civil Code section 1750 *et seq.,* as

follows:

   a. JLRNA misrepresented the Class Vehicles and warranties had
      characteristics, benefits, or uses that they did not have. Cal. Civ Code §
      1770, subd.(a)(5);

   b. JLRNA misrepresented the Class Vehicles and warranties were of a
      particular standard, quality, or grade when they were of another. Cal.
      Civ Code § 1770, subd. (a)(7);

   c. JLRNA advertised, and continues to advertise, the Class Vehicles and
      warranties with inability and intent not to sell or lease them as
      advertised. Cal. Civ Code § 1770, subd. (a)(9);

   d. JLRNA misrepresented the Class Vehicles and warranties conferred or
      involved rights, remedies, or obligations that they did not. Cal. Civ
      Code § 1770, subd. (a)(14); and

   e. JLRNA misrepresented the Class Vehicles and warranties were
      supplied in accordance with previous representations when in fact they
      were not. Cal. Civ Code § 1770, subd. (1)(16).

68.    JLRNA's unfair and deceptive acts or practices occurred repeatedly

during JLRNA's course of trade and business. These practices were material,

capable of deceiving a substantial portion of the purchasing public, and as a result

caused economic harm to purchasers and lessees of the Class Vehicles.

69.    JLRNA knew by Summer 2019, at the latest, and certainly before the

sale or lease of a Class Vehicle to Plaintiff, and many of the Class Vehicles, that the

Class Vehicles contained an inherent battery system defect, were defectively designed or manufactured, manifested serious problems leading to fire or serious injury, and were not suitable for their intended use.

70.    By Summer 2019 at the latest, JLRNA had exclusive knowledge of material facts concerning the existence of the battery system defect in its Class Vehicles. JLRNA actively concealed the battery system defect from Plaintiff and potential Class Members who purchased the Class Vehicles.

71.    JLRNA has failed to offer any solution for the battery system defect to Plaintiff and potential Class Members.

72.    JLRNA has only instructed consumers to forego essential features and functions of the Class Vehicles.

73.    JLRNA was under a duty to Plaintiff and potential Class Members to disclose the defective nature of the battery system, as well as any associated risks or costs they would have to bear and features they would have to forego by purchasing a Class Vehicle. JLRNA was under this duty because:

a. JLRNA was and is in a superior position to know the true state of the facts, and true nature of the battery system defect manifested in the Class Vehicles;

b. Plaintiff and potential Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the battery system defect until symptoms of the defect, which can be catastrophic, manifested;

      c.   JLRNA knew Plaintiff and potential Class Members could not have reasonably learned of or discovered the battery system defect until its manifestation.

74.    In failing to disclose the battery system defect, JLRNA knowingly and intentionally concealed material facts and breached its duty to refrain from doing so.

75.    The facts concealed and not disclosed by JLRNA to Plaintiff and potential Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a Class Vehicle. A reasonable consumer would consider the battery system in an electric vehicle to be an essential and desirable quality of such a vehicle. Had Plaintiff and potential Class Members known that the Class Vehicles contained the battery system defect, they would not have purchased or leased a Class Vehicle.

76.    Plaintiff and potential Class Members are reasonable consumers. They did not expect their Class Vehicles to contain a battery system defect. It is reasonable for a consumer to expect that the battery system in an electric vehicle will not contain a defect that may lead to fire or serious injury, or any other defect that would prohibit them from using the vehicle.

77.    As a result of JLRNA's misconduct as described herein, Plaintiff and potential Class Members have been harmed and suffered actual damages in that the Class Vehicles should not contain a defective battery system that increases the risk of fire or serious injury. This creates a threat to the safety of Class Members, their

passengers, and other motorists.

78.     As a direct and proximate result of JLRNA's unfair and deceptive acts, omissions, concealment, and practices, Plaintiff and potential Class Members have suffered, and will continue to suffer actual damages in that they continue to own a vehicle that they cannot use in the manner they expected to when they purchased the Class Vehicles, and when they do, they run the risk of fire or serious injury with no remedy in sight.

79.     Plaintiff and potential Class Members are entitled to equitable relief.

80.     Pursuant to California Civil Code section 1780, subd. (a)(2), Plaintiff and potential Class Members seek an injunction prohibiting the acts set forth herein which violate the Consumer Legal Remedies Act.

81.     Plaintiff seeks an order prohibiting Defendant, JLRNA, from engaging in the acts described in this Complaint and requiring JLRNA to do the following:

(1) Cease all sales of Class Vehicles to any persons or entities including sales to its California JLRNA dealerships of Class Vehicles;

(2) Issue a "Stop Sale" order to its California dealerships prohibiting the sales of any Class Vehicle to any member of the public;

(3) Take down advertisements for Class Vehicles or otherwise make abundantly clear to the general public on JLRNA's website and other advertising that Class Vehicles are subject to a defect that is not yet repairable;

(4) Toll the express warranty period for all Class Vehicles to cover, at a minimum, the time period during which the Class Vehicles have been

32

recalled until a full remedy is developed that permits the Class Vehicles to permanently and safely operate with all functions consistent with *California Civil Code* § 1795.6.

(5) Repair Class Vehicles within 30 days of presentation pursuant to *California Civil Code* § 1793.4 or offer a repurchase of said vehicles pursuant to *California Civil Code* § 1794.

82.    JLRNA acted with malice, oppression, and fraud toward Plaintiff and potential Class Members within the meaning of California Civil Code section 3294.

83.    Pursuant to California Civil Code section 1780(d), Plaintiff may recover attorney's fees and costs according to proof at trial.

## <u>SECOND COUNT</u>
### Violation of the Song-Beverly Consumer Warranty Act – Breach of Express Warranty
### (On Behalf of Plaintiff and Class Members)

84.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

85.    The Class Vehicles were sold to Plaintiff and potential Class Members with express warranties provided by JLRNA that the Class Vehicles would be free from defects in materials or workmanship during the applicable warranty period and that to the extent the Class Vehicles had defects, JLRNA would repair the defects.

86.    The Class Vehicles were delivered to Plaintiff and potential Class Members with serious defects and nonconformities under the warranty and

developed other serious defects and nonconformities under the warranty.

87.    Pursuant to the Song-Beverly Consumer Warranty Act ("SBA"), California Civil Code sections 1790 *et seq.* the Class Vehicles are subject to the Act and were used for purposes covered by the Act.

88.    Plaintiff and Class Members are "buyers" under the SBA.

89.    JLRNA is a "manufacturer" and/or "distributor" under the SBA.

90.    The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value and/or safety of the Vehicle.

91.    Plaintiff and potential Class Members delivered the Class Vehicles to the repair facilities of JLRNA for repair of the nonconformities or, because of the lack of repair available, Class Members did not deliver the Class Vehicles for repair as it would have been futile.

92.    JLRNA, through its repair facilities, were unable to and/or refused to conform the Class Vehicles to the applicable express warranties after a reasonable number of repair attempts, and/or within a reasonable time, and/or within 30 days and expressly advised Plaintiff and potential Class Members that further attempts to repair their vehicles would be futile as JLRNA did not have a fix for the defective battery system.

93.    JLRNA has failed to provide its representatives (JLRNA authorized

dealers) for purposes of warranty repairs sufficient literature and parts to effect repair to the class vehicles. JLRNA is required to do so pursuant to *California Civil Code* § 1793.2(a)(3)

94.     Notwithstanding JLRNA's failures to comply with various provisions of the SBA and Plaintiff's and potential Class Members' entitlement, JLRNA failed to either promptly replace or repurchase the Class Vehicles in accordance with the SBA.

95.     By failure of Defendant JLRNA to remedy the defects as alleged above, or to repurchase or replace the Class Vehicles, Defendant JLRNA has breached its obligations under the Act.

96.     Under the SBA, Plaintiff and potential Class Members are entitled to damages pursuant to California Civil Code sections 1793.2 and 1794, *et seq*.

97.     Plaintiff and potential Class Members are entitled to recover all incidental and consequential damages pursuant to 1794 *et seq*. and California Commercial Code sections 2714 and 2715, *et seq.*

98.     Plaintiff and potential Class Members are entitled under the SBA to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

99.     Plaintiff is entitled to prejudgment interest pursuant to California Civil

Code section 3287.

## THIRD COUNT
### Violation of the Song-Beverly Consumer Warranty Act – Breach of Implied Warranty
### (On Behalf of Plaintiff and Class Members)

100.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

101.   JLRNA is the "manufacturer," "distributor," and/or "retail seller" of the Class Vehicles and JLRNA's obligation under the implied warranties is either direct or by operation of law pursuant to California Civil Code section 1795.

102.   Each Class Vehicle was accompanied by an implied warranty that the Class Vehicles were merchantable pursuant to California Civil Code section 1792.

103.   The Class Vehicles were not fit for the ordinary purpose for which such goods are used because it was equipped with defects in the battery system.

104.   The Class Vehicles were not of the same quality as those generally acceptable in the trade because they were equipped with defects in the Class Vehicle's battery system causing risk of fire and serious injury.

105.   The Class Vehicles did not measure up to the promises or facts stated on the label of the car; namely that it was and would operate as an electric vehicle with a stated mileage range at full charge.

106.   Plaintiff and potential Class Members are entitled to justifiably revoke

acceptance of the Class Vehicles under California Civil Code, section 1794, *et seq.*

107.  Plaintiff and potential Class Members hereby revoke acceptance of the Class Vehicles.

108.  Under the Act, Plaintiff and potential Class Members are entitled to damages pursuant to California Civil Code sections 1793.2 and 1794, *et seq.*

109.  Plaintiff and potential Class Members are entitled to recover all incidental and consequential damages pursuant to California Civil Code section 1794 *et seq.* and Commercial Code, sections 2714 and 2715, *et seq.*

110.  Plaintiff and potential Class Members are entitled under the SBA to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

111.  Plaintiff is entitled to prejudgment interest pursuant to Civil Code section 3287.

## **FOURTH COUNT**
**Violation the Unfair Business Practices Act – Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of Plaintiff and Class Members)**

112.  Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

113.  Actions for relief under the unfair competition law may be based on any

business act or practice that is within the broad definition of the Unfair Business Practices Act. Cal. Bus. & Prof. Code, §§ 17200, *et seq*. ("UCL"). Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A causal connection exists between JLRNA's business practices and the alleged harm in that JLRNA's conduct caused or was likely to cause substantial injury to Plaintiff and potential Class Members.

### JLRNA's Unfair Business Acts and Practices

114.    JLRNA's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further JLRNA's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

115.    Plaintiff and potential Class Members' injuries are: (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition; and, (3) not injuries that consumers themselves could reasonably have avoided.

116.    Here, JLRNA's conduct has caused and continues to cause substantial

injury to Plaintiff and potential Class Members. Plaintiff and potential Class Members have suffered injury in fact due to JLRNA's decision to knowingly sell defective Class Vehicles, with no remedy or fix available for the known defect. JLRNA's conduct has caused substantial injury to Plaintiff and potential Class Members.

117.   JLRNA's conduct as alleged herein solely benefits JLRNA while providing no benefit of any kind to Plaintiff or potential Class Members. Such deception utilized by JLRNA convinced Plaintiff and potential Class Members that the Class Vehicles were of a certain value and price to induce them to spend money on the Class Vehicles. Knowing that Class Vehicles were not of a suitable quality to be sold, due to the defective battery system, JLRNA unfairly profited from their sale. The injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

118.   The injuries suffered by Plaintiff and potential Class Members are not injuries that they could reasonably have avoided. After JLRNA falsely represented the quality of the Class Vehicles, Plaintiff and potential Class Members suffered injury in fact due to their subsequent purchase and/or lease of the defective Class Vehicles. JLRNA failed to take reasonable steps to inform Plaintiff and potential Class Members that the Class Vehicles were in a potentially permanently defective condition due to the defects with the battery system. As such, JLRNA leveraged its

position of power and its superior (and singular) knowledge to deceive Plaintiff and potential Class Members to purchase the Class Vehicles. The injury suffered by Plaintiff and potential Class Members are not injuries that they could reasonably have avoided.

119.    JLRNA's conduct violated the "unfair" prong of Section 17200.

## JLRNA's Fraudulent Business Acts and Practices

120.    JLRNA's fraudulent business acts and practices were likely to and did deceive members of the public.

121.    Plaintiff and potential Class Members were not only likely to be deceived, but in fact were deceived by JLRNA. Plaintiff and potential Class Members agreed to purchase or lease Class Vehicles under the basic assumption that they would be free from battery system defects that could lead to fire and serious injury, when in fact they were not. Plaintiff's and potential Class Members' reliance upon JLRNA's deceptive statements is reasonable due to the unequal bargaining power between JLRNA and Plaintiff and potential Class Members as well as JLRNA's superior knowledge. It is likely that JLRNA's fraudulent business practice would deceive members of the public at large.

122.    JLRNA deceived Plaintiff and Class Members by falsely representing the Class Vehicles as being of merchantable, suitable quality. This conduct satisfies the "fraudulent" element of UCL Section 17200.

## **JLRNA's Unlawful Business Acts and Practices**

123.   JLRNA deceived Plaintiff and potential Class Members by representing the Class Vehicles to be of a certain, non-defective, quality, and unfairly deceived Plaintiff and potential Class Members by representing that the Class Vehicles were suitable for sale, when JLRNA knew that they were not.

124.   JLRNA used misrepresentations and concealments of material facts to induce Plaintiff and potential Class Members to purchase the Class Vehicles, in violation of UCL Section 17200. Had JLRNA not misrepresented the quality of the Class Vehicles, Plaintiff and potential Class Members would not have purchased the Class Vehicles. JLRNA's conduct caused and continues to cause economic harm to Plaintiff and potential Class Members.

125.   The misrepresentations and concealments by JLRNA were "unlawful" business practices or acts under UCL section 17200.

126.   JLRNA has engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against JLRNA.   Pursuant to UCL section 17203, Plaintiff and potential Class Members seek an order requiring JLRNA to immediately cease its unlawful, unfair, and fraudulent business practices, and requiring JLRNA to correct its actions.

## FIFTH COUNT
### Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and Class Members)

127.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

128.   Plaintiff brings this clam on behalf of herself and on behalf of potential Class Members.

129.   Every contract in the State of California has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of the contract's express terms.

130.   Plaintiff and potential Class Members have complied with and performed all conditions of the contract.

131.   JLRNA breached the implied covenant of good faith and fair dealing by failing to inform Plaintiff and potential Class Members of the battery system defect affecting the Class Vehicles and failing to properly repair this defect.

132.   JLRNA acted in bad faith and/or with malicious motive in denying Plaintiff and potential Class Members the full benefit of their bargain as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of herself and all others similarly situated prays as follows:

1)    For an award of actual, general, special, incidental, statutory, compensatory, and consequential damages on claims brought under California's Unfair Competition Law, breach of express and implied warranties under all relevant statutes, and breach of the implied covenant of good faith and fair dealing and in an amount to be proven at trial.

2)    For a Temporary Restraining Order and a Preliminary Injunction:

a)    enjoining JLRNA from continuing to sell Class Vehicles containing the battery system defect to its California JLRNA dealerships;

b)    Directing JLRNA to issue a "Stop Sale" order to its California dealerships prohibiting the sales of any Class Vehicle to any member of the public;

c)    Directing JLRNA to take down advertisements for Class Vehicles or otherwise make abundantly clear to the general public on JLRNA's website and other advertising that Class Vehicles are subject to a defect that is not yet repairable that makes the vehicle dangerous;

d)    Directing JLRNA to toll the express warranty period for all Class Vehicles to cover, at a minimum, the time period during which the Class Vehicles have been recalled until a full remedy is developed that permits the Class Vehicles

43

to permanently and safely operate with all functions consistent with *California Civil Code* § 1795.6.

e)      Directing JLRNA to repair Class Vehicles within 30 days of presentation pursuant to *California Civil Code* § 1793.4 or offer a repurchase of said vehicles pursuant to *California Civil Code* § 1794.

3)      For an order certifying this action as a class action.

4)      For an order appointing Plaintiff as Class Representative and her counsel as Class Counsel.

5)      For attorney's fees.

6)      For prejudgment interest.

7)      For costs of suit.

8)      For an order requiring JLRNA to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate.

9)      For any and all other relief the court may deem necessary and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff on behalf of herself and other similarly situated, hereby demands trial by jury in this action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure.

Dated:  August 9, 2023                 Respectfully Submitted,

By: *s/ Robert A. Magnanini*
Robert A. Magnanini
STONE & MAGNANINI LLP
400 Connell Drive, Suite 6200
Berkeley Heights NJ, 07922
Tel: (973) 218-1111


Richard M. Wirtz, Esq.
(*Pro Hac Vice Forthcoming*)
Daniel Z. Inscore, Esq.
(*Pro Hac Vice Forthcoming*)
Alana L. Mellgren, Esq.
(*Pro Hac Vice Forthcoming*)
**WIRTZ LAW APC**
4370 La Jolla Village Drive, Suite 800
San Diego, CA 92122
Telephone: (858) 259-5009
eservice@wirtzlaw.com;
rwirtz@wirtzlaw.com

Mark O'Connor, Esq.
(*Pro Hac Vice Forthcoming*)
**O'CONNOR LAW GROUP, LLC**
384 Forest Avenue Suite 17
Laguna Beach, CA 92651
Telephone: (949) 494-9090
moconnor@teamolg.com


*Attorneys for Plaintiff Sharon Joyce*