## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON JOYCE, NANCY JORS, AND VIKAS VENKATACHALA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware Limited Liability Company, and Does 1 through 60,<br><br>        Defendant. | Case No. 2:23-cv-04281-MEF-AME<br><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**AND**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs SHARON JOYCE, NANCY JORS, and VIKAS VENKATACHALA alleges as follows against Defendant JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware Limited Liability Company ("JLRNA"), on information and belief, formed after an inquiry reasonable under the circumstances:

## **PARTIES**

1.    Plaintiff Sharon Joyce ("Plaintiff Joyce") is an individual residing and domiciled in San Diego County, State of California.

2.    Plaintiff Nancy Jors ("Plaintiff Jors") is an individual residing and domiciled in San Diego County, State of California.

3.     Plaintiff Vikas Venkatachala ("Plaintiff Venkatachala") is an individual residing and domiciled in Collin County, State of Texas.

4.     Defendant JLRNA is and at all relevant times was a Delaware Limited Liability Company authorized to do business and conducting business throughout the states of California and Texas directly or via its authorized sales agents and authorized repair facilities. JLRNA's principal place of business is 100 Jaguar Land Rover Way, Mahwah, New Jersey 07495. JLRNA is a wholly owned subsidiary of Jaguar Land Rover Holdings Limited. Jaguar Land Rover Holdings Limited is a citizen of England with its principal place of business in Coventry, England. JLRNA's owners/members are citizens of New Jersey.

5.     JLRNA is engaged in the manufacture, sale, and/or distribution of motor vehicles and related services. Additionally, JLRNA engages in the marketing, supplying, and selling of written warranties to the public at large through a broad network of authorized sales facilities across the United States.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d)(2), which provides for original jurisdiction in the federal courts over any class action in which a member of the plaintiff class is a citizen of a State different from the State citizenship of any defendant, and the amount in controversy exceeds the sum of

$5,000,000.00 exclusive of interests and costs. Here, there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs and there is minimal diversity between Plaintiffs and Defendant. Additionally, this Court also has supplemental jurisdiction over the set forth state law claims, and to the extent not covered by CAFA, over the Magnuson-Moss Consumer Warranty Claims, pursuant to 28 U.S.C. § 1367. Subject matter jurisdiction over this matter is also conferred upon and vested in this Court based on diversity of citizenship under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, as to each Plaintiff, exclusive of interest and costs.

7.    This Court has personal jurisdiction over JLRNA because JLRNA is both headquartered in and conducts substantial business in this judicial district, thereby purposely and intentionally availing itself of the benefits and protections of this district when placing motor vehicles into the stream of commerce within California and the United States. Personal jurisdiction over JLRNA is foreseeable, fair, and proper.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. JLRNA is both headquartered in and transacts substantial business in this district with regularity and it is subject to personal jurisdiction in this district. Additionally, JLRNA advertises and markets its products in this district, and has received substantial revenue and profits from its sales and leasing of motor vehicles in this

district. Thus, a substantial part of the events and/or omissions giving rise to these claims occurred in within this district. Venue is thus proper.

## FACTUAL ALLEGATIONS

9.     Plaintiffs Joyce and Jors bring this action individually for themselves and on behalf of all persons who purchased or leased in California, certain vehicles equipped with uniform and uniformly defective battery systems manufactured, distributed, warranted, marketed and/or sold or leased by JLRNA as described herein ("California Class Vehicles"), and for which JLRNA issued a warranty.

10.     Plaintiff Venkatachala brings this action individually for themselves and on behalf of all persons who purchased or leased in Texas, certain vehicles equipped with uniform and uniformly defective battery systems manufactured, distributed, warranted, marketed and/or sold or leased by JLRNA as described herein ("Texas Class Vehicles"), and for which JLRNA issued a warranty.

11.     All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

### Plaintiff Joyce

12.     On or around July 29, 2019, Plaintiff Joyce purchased a Class Vehicle—a new 2020 model year Jaguar I-Pace, VIN No.: SADHC2S10L1F80769 ("Joyce Vehicle") from Hoehn Jaguar Land Rover, Inc., in Carlsbad, California. At purchase, the Joyce Vehicle had 26 miles on its odometer. Plaintiff Joyce entered

this sale agreement in the State of California.

13.    Defendant JLRNA expressly warranted that the Joyce Vehicle would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the Joyce Vehicle had defects, Defendant JLRNA would repair the defects.

14.    Defendant JLRNA impliedly warranted that the Vehicle would be of the same quality as similar vehicles sold in the trade (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the Vehicle would be fit for the ordinary purposes for which similar vehicles are used (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the vehicle would match the description warranted in its labeling (that it would charge and operate properly and fully).

15.    The Joyce Vehicle was delivered to Plaintiff Joyce with serious defects and nonconformities under warranty, which have not been repaired.

16.    On or about September 3, 2019, when presenting the Joyce Vehicle for various defects, the authorized repair facility noted on the repair order that during the pre-delivery inspection, Plaintiff Joyce's Vehicle displayed reduced electric vehicle range. There was no campaign or repair procedure available to repair the defect. No repair was made at this time.

17.    On or about October 18, 2019, when presenting the Joyce Vehicle for

various defects, the authorized repair facility advised Plaintiff Joyce thatCampaign H247 was available for the existing defect of the displayed warning for reduced electric vehicle range.  Campaign H247 was instituted to replace the ECU module. The authorized repair facility performed Campaign H247 on Plaintiff Joyce's Vehicle. According to Jaguar's records, Campaign H247 was suspended on or about August 2, 2019, to allow for further investigations to be undertaken.

18.    On or about January 9, 2020, Jaguar issued Campaign H264.   The purpose of this software enhancement was to deliver up to 12 miles of additional real-world range on a "full charge."  Among other possible changes, Campaign H264 changed the torque distribution of the permanent all-wheel-drive system to deliver greater efficiency when driving in ECO mode.  H264 also made refinements to the thermal management control system to make the active radiator vanes close more often to enhance aerodynamics.  H264 changed the battery to run to a lower state of charge than previously without affecting drivability, durability, or performance. And, H264 recalibrated the Regenerative Braking system to harvest energy more efficiently when the battery is in a high state of charge and recover more energy at low speeds.

19.    On or about February 5, 2020, Jaguar's authorized repair facility performed H264 on Plaintiff Joyce's Vehicle.

20.    On or about February 9, 2021, Plaintiff Joyce's Vehicle experienced a

6

high voltage battery failure. The Vehicle would not start and the screens would not come on. The Joyce Vehicle had to be towed into Jaguar's authorized repair facility for repair.  The Joyce Vehicle exhibited Fault POABF-12 in the battery energy control module and multiple software systems were updated to address the defects, including updates to the BECM, BCCM, Epic A, Epic B, and Epic C software modules.

21.  On or about April 28, 2023, Plaintiff Joyce's Vehicle experienced another high voltage battery failure leaving her stranded in the middle of a street and blocking people from exiting their parking spaces.  The Joyce Vehicle displayed a battery fault light, other warning lights, then died.  The Joyce Vehicle was towed in and both the startup battery and secondary battery were replaced.

22.  Plaintiff Joyce delivered the Joyce Vehicle to JLRNA authorized repair facilities, for repair of defects in the battery system under the written warranty. Plaintiff Joyce was informed that the Vehicle had been repaired.

23.  Notwithstanding all the presentations, the Joyce Vehicle still had substantially impairing defects.

24.  On or about July 18, 2023, JLRNA distributed to Class Vehicle owners, a consumer notification of Safety Recall H441: Battery Energy Control Module ("BECM") software update. According to JLRNA's recall, "the high-voltage battery may overheat which increases the risk of a fire and occupant injury and/or injury to

persons outside the Vehicle, as well as property damage." The notice stated that warning signs include battery fault messages, popping sounds, burning smells, smoke, and flames. The recall notice "remedy" includes a software update intended to "monitor the battery pack assembly operational status that indicates where the battery contains conditions which may lead to overheating." The software update is intended to provide better warning of potential overheating and fire. It will also limit the battery charging capacity to 75%. Customers are recommended to park and charge their vehicles outside. Further, until the recall is completed customers are advised not to charge beyond 75% capacity.

25.     On or about August 3, 2023, Plaintiff Joyce received a letter from JLRNA notifying her of Safety Recall H441. A true and correct copy of the recall notification letter is attached as **Exhibit 1**.

<u>Plaintiff Jors</u>

26.     On or about August 31, 2019, Plaintiff Jors purchased a Class Vehicle—a new 2019 model year Jaguar I-Pace, VIN No.: SADHB2S17K1F70290 ("Jors Vehicle") from Hoehn Jaguar Land Rover, Inc., in Carlsbad, California. At purchase, the Vehicle had 100 miles on its odometer. Plaintiff Jors entered this sale agreement in the State of California.

27.     Defendant JLRNA expressly warranted that the Jors Vehicle would be free from defects in materials, nonconformities, or workmanship during the

applicable warranty period and to the extent the Vehicle had defects, Defendant JLRNA would repair the defects.

28.    Defendant JLRNA impliedly warranted that the Jors Vehicle would be of the same quality as similar vehicles sold in the trade (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the Jors Vehicle would be fit for the ordinary purposes for which similar vehicles are used (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the vehicle would measure up to the promises and facts stated in its labeling (that it would charge and operate properly and fully).

29.    The Jors Vehicle was delivered to Plaintiff Jors with serious defects and nonconformities under warranty, which have not been repaired.

30.    On September 19, 2019, Plaintiff Jors presented the vehicle to Jaguar's authorized repair facility for electrical system faults.

31.    On October 21, 2019, Plaintiff Jors again presented her vehicle to Jaguar's authorized repair facility for a charging error and electrical system faults. The repair facility documented myriad fault codes in multiple modules. Rather than perform any diagnosis, the repair facility documented performing software updates and clearing the fault codes.

32.    On December 26, 2019, the Jors Vehicle experienced a battery failure. The Vehicle had to be towed into Jaguar's authorized repair facility for repair.

Plaintiff Jors reported the vehicle would turn off when placed in drive. The Vehicle exhibited multiple warning lights including a traction battery light. The repair facility contacted JLRNA for assistance. The repair facility documented that it replaced an auxiliary battery, preformed software updates, and a battery enhancement program. Recall H264 was documented also.

33.    On March 31, 2021, Plaintiff Jors presented her vehicle the Jaguar's authorized repair facility for electrical problems. The repair facility documented a battery energy control module updated was performed under Recall H280.

34.    On August 22, 2022, the Jors Vehicle was towed to Jaguar's authorized repair facility for failure to start. Plaintiff Jors reported multiple warning lamps, for the battery, the charging system, and brakes. The Jors Vehicle failed to accelerate and shut down. The repair facility documented that it repaired the startup battery and auxiliary battery.

35.    On June 23, 2023, Plaintiff Jors again brought the vehicle to Jaguar's authorized repair facility for a fault in the charging system. The repair facility failed to document the cause of the fault, but documented a software update and Recall H441 for the battery energy control module.

36.    On July 31, 2023, Plaintiff Jors again brought the vehicle to Jaguar's authorized repair facility for a traction battery fault. The repair facility again contacted JLRNA for assistance. The repair facility documented that it replaced two

10

faulty modules within the high voltage battery and the power distribution module. The vehicle was at the repair facility for over 50 days on this occasion.

37.    Notwithstanding all the presentations, the Jors Vehicle still has substantially impairing defects.

<u>Plaintiff Venkatachala</u>

38.    On or about December 27, 2019, Plaintiff Venkatachala purchased a Class Vehicle—a new 2019 model year Jaguar I-Pace, VIN No.: SADHC2S10K1F75473 ("Venkatachala Vehicle") from Land Rover Frisco in Frisco, Texas. At purchase, the Vehicle had 100 miles on its odometer. Plaintiff Venkatachala entered this sale agreement in the State of Texas.

39.    Defendant JLRNA expressly warranted that the Venkatachala Vehicle would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the vehicle had defects, Defendant JLRNA would repair the defects.

40.    Defendant JLRNA impliedly warranted that the Venkatachala Vehicle would be of the same quality as similar vehicles sold in the trade (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the Venkatachala Vehicle would be fit for the ordinary purposes for which similar vehicles are used (similar vehicles being electric vehicles that charge and operate properly and fully without risk of fire) and that the vehicle would measure

up to the promises and facts stated in its labeling (that it would charge and operate properly and fully).

41.    The Venkatachala Vehicle was delivered to Plaintiff Venkatachala with serious defects and nonconformities under warranty, which have not been repaired.

42.    On or about June 7, 2023, the Venkatachala Vehicle experienced a battery failure. Plaintiff Venkatachala reported the vehicle would not start, had no power, and was not braking properly. The repair facility documented that that it replaced the startup battery and updated a series of modules, including the powertrain control module and the battery energy control module. The repair facility also documented that it lacked the parts or information to complete the battery recall, H441.

43.    On June 11, 2023, the Venkatachala Vehicle suffered diminished of braking capability which Plaintiff Venkatachala immediately reported to his service advisor at Jaguar's authorized repair facility.

44.    On or about June 26, 2023, Plaintiff Venkatachala presented his vehicle again to Jaguar's authorized repair facility and reported the vehicle would not start, had no power, and was not braking properly.  Plaintiff Venkatachala reported the vehicle would turn off when placed in drive. The repair facility documented that that it replaced the auxiliary battery and performed recall H150 to update the battery energy control module.

45.     On June 30, 2023, Plaintiff Venkatachala reported to his service advisor at Jaguar's authorized repair facility that his vehicle's full charge now covered a lesser distance.  The service advisor told Plaintiff Venkatachala not to bring the vehicle in for repair.

46.     On July 28, 2023, Plaintiff Venkatachala reported to his service advisor at Jaguar's authorized repair facility that his vehicle exhibited a traction battery fault and asked if he should bring his vehicle to the repair facility.

47.     On August 8, 2023, Plaintiff Venkatachala received the recall customer letter for H441 and made an appointment with his service advisor at Jaguar's authorized repair facility for August 22, 2023.

48.     On or about August 22, 2023, Plaintiff Venkatachala presented his vehicle to Jaguar's authorized repair facility. The service advisor told Plaintiff Venkatachala that there was a bad cell in the "big battery system" and that the technician was getting assistance from JLRNA to replace it. As of December 1, 2023, the Venkatachala Vehicle is still at the repair facility.

49.     On September 11, 2023, Plaintiff Venkatachala inquired with the service advisor about the buyback policy. The service advisor gave Plaintiff Venkatachala JLRNA's information. Plaintiff contacted JLRNA, explained the problems that he was having and asked JLRNA to repurchase his vehicle. JLRNA confirmed the request by email. As of December 1, 2023, JLRNA has not responded.

50.    Notwithstanding all the presentations, the Venkatachala Vehicle still had substantially impairing defects.

<u>All Plaintiffs</u>

51.    This action is brought to remedy violations of law related to JLRNA's manufacture, distribution, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' battery systems have a serious manufacturing and/or materials defect caused by thermal overload leading the battery systems in Class Vehicles to be unreasonably dangerous. JLRNA has no fix for this defect.  Charging the high voltage battery can result in a fire and lead to significant personal injury.

52.    According to JLRNA's recall, the battery system is manufactured in substantially the same manner in all Class Vehicles and does not vary in its construction, operation, or control. JLRNA's 573 Recall Report to the National Highway Traffic Safety Administration estimates 100% of Class Vehicles are affected.

53.    Plaintiffs believe the unreasonably dangerous and defective battery system diminishes their health and safety, the health and safety of all others who may ride in their vehicles, and to other motorists.

54.    Before the sale of the Class Vehicles, Defendant knew of the battery system defect through internal sources, communications with the supplier who sold

the same or similar batteries to other manufacturers for use in earlier model-year vehicles, pre-release testing, pre-delivery inspection and early warranty data, and consumer complaints, including specific instances of potential Class Members bringing Class Vehicles to JLRNA for inspection and repair. Recalls are undertaken after numerous field failures and feedback to the auto manufacturer of such failures. Auto manufacturers and distributors, such as JLRNA, collect data such as field reports, technical data, warranty repair statistics, and other feedback from the field. From this information and data JLRNA learns of failures that are occurring. JLRNA then undertakes analysis of the data for the failure mode and ultimately attempts to engineer a fix for the failure mode. JLRNA also initiates the recall, a process that includes having it analyzed and double checked by various departments, managing agents, and corporate executives, and then publishing the recall.

55.    As such, JLRNA is aware of the failures long before the actual recall is issued because of the logistics and processes necessary simply to approve and publish a recall. JLRNA therefore knew before sale of the subject Vehicle and other Class Vehicles of the inherent and existing dangerous defects. Despite this knowledge, JLRNA failed to disclose and actively concealed the battery system defect from Plaintiffs and other potential Class Members and from the public. Instead, JLRNA continued to market the Class Vehicles to Class Members without informing them of the underlying—extremely dangerous—manufacturing defect

present in the Class Vehicles' battery systems. JLRNA has failed to remedy the defect to date. Indeed, JLRNA and its authorized dealers are still offering Class Vehicles with the existing defective battery systems for sale or lease to the public and unsuspecting consumers.

56.    When Plaintiffs and other potential Class Members complained about the defective and dangerous battery system, JLRNA failed to remedy the issue and informed individual potential Class Members that there was no fix. Instead, potential Class Members, including Plaintiffs: (a) were told not to charge their vehicles above 75%, (b) not to park inside, (c) not to charge inside, (d) and to have a recall performed that would not prevent a fire, but would, at best, predict a fire, and would limit charge capacity to 75%.

57.    Based on the recall's timing and the recall process, JLRNA knew of this problem, its pervasiveness, and lack of a proper fix for weeks, if not months, before notice was given to consumers on or about July 18, 2023 and while Class Vehicles were being sold and leased to the public. JLRNA knew of these issues because of the very nature of the recall but nevertheless continued selling Class Vehicles to potential Class Members like Plaintiffs.

58.    The defects described herein violate the express written warranties issued by JLRNA, as well as the implied warranty of merchantability.

59.    Although Plaintiffs and other potential Class Members brought the

Vehicle to JLRNA for repair, JLRNA failed to and/or refused to repair the defect for which it stated there was no fix available. Under these circumstances any extra efforts by Plaintiffs and the potential Class Members to have the Class Vehicles repaired would have been futile as JLRNA openly admitted that it did not have any way to repair the defective battery system.

60.     Plaintiffs and potential Class Members provided JLRNA sufficient opportunity to repair the Class Vehicles.

61.     As a result of JLRNA's conduct, Plaintiffs and potential Class Members were harmed, and suffered actual damages in that the Class Vehicles have manifested and continue to manifest the battery system defect. JLRNA has not provided a permanent or any remedy for this defect. Plaintiffs and potential Class Members have justifiably lost confidence in the Class Vehicles' safety and reliability. The battery system defect substantially impairs the value of the Class Vehicles owned by Plaintiffs and the potential Class Members.

62.     JLRNA can issue a "stop sale" order to all its authorized JLRNA dealerships through its dealer agreements with said dealers.  Said "stop sale" clauses are a normal and standard clause in auto manufacturer and dealership agreements. JLRNA has issued stop sale orders in the past.

63.     Despite its knowledge of the battery system defect and ability to issue a stop sale order, JLRNA rather continues to market, advertise, and promote the

17

defective vehicles subject to the recall.  Attached as **Exhibit 2** is a true and correct printout of JLRNA of North America's website which promotes, advertises, and markets the defective vehicles without mentioning the recall or existing defects. JLRNA's website not only markets, advertises, and promotes said vehicles but allows consumers, potential class members to, "build" one's own vehicle and obtain a price quote and referral to an authorized dealership. The website continues to promote the 246-mile range on full charge despite the recommendation that vehicles that have not had the recall performed cannot be safely charged beyond 75% and that vehicles that have had the recall performed cannot be charged beyond 75% at all. That all I-Pace vehicles have a fire risk and are subject to the recall is not disclosed at all.

64.    Despite its knowledge of the battery system defect and ability to issue a stop sale order, JLRNA's authorized dealerships continue to market, sell, and lease vehicles affected with the defect today.  JLRNA has not issued or made effective a "stop sale order" available to JLRNA dealerships to prohibit the sale of Class Vehicles.

65.    Attached as **Exhibit 3** are printouts from various JLRNA authorized dealership webpages listing vehicles for sale and lease by JLRNA with VIN numbers attributable to Class Vehicles containing the battery system defect.

66.    The Jaguar I-Pace Brochure states:

18

PEACE OF MIND

For added peace of mind, the 90kWh battery is covered by a comprehensive 8 year warranty in addition to your standard Jaguar warranty. What's more, you'll always have the full support of our established Jaguar Retailer network and highly-trained technicians who know your Jaguar inside and out. . .

RANGE

A single full charge provides a range of 234 miles – more than enough to cover the average weekly commute of 150 miles . . .

Positioned as low down as possible and right between the axles, the 90kWh battery is constructed of high energy density lithium-ion pouch cells. It's designed for longevity and supports protracted periods of sustained maximum power. The I-PACE constantly maintains the ideal temperature for its battery using state-of-the-art thermal management systems. For your peace of mind, the I-PACE 90kWh battery comes with an 8 year 100,000 miles warranty. . .

The I-PACE 90kWh battery warranty is limited to 8 years or 100,000 miles (whichever comes first). It is redeemable in the case of any manufacturing defect or should a certified Jaguar Retailer measure that the battery has dropped below a 70 percent State of Health.

67.    In deciding to purchase Class Vehicles, Plaintiffs and Class Members received and reasonably relied in these representations or representations like them in the JLRNA's brochures, on its website, or made by the sales personnel at JLRNA's authorized dealerships. Moreover, JLRNA did not disclose but instead concealed the Battery System Defect.

68.    The Battery System Defect caused battery failures and "no-start" conditions in each of Plaintiffs' vehicles. The "state-of-the-art" battery management system did not maintain the ideal temperature. Each of Plaintiffs' vehicles suffered

downstream effects such as failure in the regenerative braking system, premature failure of the 12V battery system, and faulty or failed operation of the rear-view cameras. At times, Plaintiffs' vehicles would display significantly less than 234 or 246 miles available on a full charge.

## The Battery System Defect

69.    On June 20, 2019, JLRNA received its first report of a battery fire in a Class Vehicle. More battery fires were reported on July 6, 2020, August 31, 2021, August 31, 2021, November 11, 2021, December 20, 2021, June 22, 2022, and May 3, 2023.

70.    The following NHTSA consumer complaints were received regarding Class Vehicles:

> September 17, 2023
> NHTSA ID Number: 11545052
> Incident Date September 15, 2023
> Consumer Location SAN ANTONIO, TX
> Vehicle Identification Number SADHD2S10K1****
> No normal braking available; unable to place car in park as normal; unable to turn car off as normal; The All Surface Progress Control (ASPC) lamp illuminated to confirm that the ASPC system is enabled however the brake warning lamp illuminates but the vehicle cannot be driven with care contrary to what the manual states, but seek qualified assistance urgently contradicts dangerous hard no braking system probably due to corrupt auxiliary battery system employed by Jaguar. Driving home near my house and into the garage the whole braking and parking system becomes disfunctional was difficult to shut off car. Next day checked I-PACE system and was difficult to turn on back out. Drove down the block tested brakes. Brakes hard and secure or operable as brakes. Returned to garage slowly relying on car to stop some how with unusable brakes. Brake battery shoes 10.84 volts. Will contact

20

dealers on Monday concerning unsafe to drive I-Pace due to jeopardized braking by system design.

August 30, 2023
NHTSA ID Number: 11541599
Incident Date August 30, 2023
Consumer Location TAMPA, FL
Vehicle Identification Number SADHC2S11L1****
The contact owns a 2020 Jaguar I-Pace. The contact received notification of NHTSA Campaign Number: 23V369000 (Electrical System) however, the part to do the recall repair was not yet available. The local dealer was contacted and confirmed that they were waiting for the software to perform the recall repair. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue and confirmed that the software was not available. The contact had not experienced a failure. VIN tool shows no open recall.

August 2, 2023
NHTSA ID Number: 11535991
Incident Date July 26, 2023
Consumer Location SANTA FE, NM
Vehicle Identification Number SADHC2S18L1****
The contact owns a 2020 Jaguar I-Pace. The contact stated that while charging the battery in the garage, the vehicle started overheating with the fan activated. The contact stated that the garage became hot, and the contact disconnected the battery before causing severe damage. The contact stated that while driving, the battery decreased by 50 miles unexpectedly. The contact was able to recharge the battery and the vehicle resumed normal operation. The contact then received notification of NHTSA Campaign Number: 23V369000 (Electrical System). After reading the recall remedy, the contact was concerned that the over-the-air (OTA) update was a sufficient remedy for the vehicle. The manufacturer was not notified of the failure. The vehicle was not repaired. The failure mileage was approximately 15,000.

September 28, 2023
NHTSA ID Number: 11547060
Incident Date July 21, 2023

21

Consumer Location CYPRESS, TX
Vehicle Identification Number SADHB2S19L1****
The contact owns a 2020 Jaguar I-Pace. The contact stated while driving at an undisclosed speed, the vehicle stalled. The vehicle was taken to the dealer, who replaced the battery; however, the failure recurred. The vehicle was taken back to the dealer but was not diagnosed or repaired. The manufacturer was not made aware of the failure. The failure mileage was approximately 25,000.

July 31, 2023
NHTSA ID Number: 11535550
Incident Date July 29, 2023
Consumer Location ELK GROVE VILLAGE, IL
Vehicle Identification Number SADHD2S11N1****
The contact owns a 2022 Jaguar I-Pace. The contact stated that the vehicle was taken to the dealer because the vehicle failed to charge as needed. The contact then received a recall notification of NHTSA Campaign Number: 23V369000 (Electrical System). The vehicle was towed to the dealer where the recall was completed; however, the contact stated that while charging the vehicle, the garage and the vehicle overheated. The contact stated that the vehicle was extremely hot near the high-voltage battery area. The contact was concerned that the issue could cause a fire. No warning lights were illuminated. The vehicle was taken to the dealer however, the failure could not be duplicated. The vehicle was not repaired. The manufacturer was notified of the failure and the contact was provided a case number. No further assistance was provided. The failure mileage was approximately 27,000.

November 3, 2022
NHTSA ID Number: 11492129
Incident Date September 28, 2022
Consumer Location JUPITER, FL
Vehicle Identification Number SADHD2S15K1****
The BCCM in a high number of 2019 Jaguar iPace cars are going bad. The BCCM is the main charging component of the vehicle that controls the electrical system and creates a huge hazard and series of malfunctions when it goes bad. It renders the car immobile and you cannot charge it. The dealerships and Jaguar North America refuse to recognize this. There is a significant backorder of these parts because

of this issue and the dealership mentioned to me that they see this issue ALL THE TIME. Jaguar should be recalling this part for those of us, like myself, whose car is out of warranty.

October 14, 2022
NHTSA ID Number: 11489256
Incident Date May 2, 2019
Consumer Location LEXINGTON, KY
Vehicle Identification Number SADHD2S17K1****
Since April of this year, the car has consistently had problems! A few months ago, it started turning off suddenly!! Yes, suddenly even while driving! This was very alarming. I took it to the dealer in Cincinnati where it stayed for almost a month to be fixed! Then towards the end of August, it started running out of charge / not charging after driving a few miles with a dashboard warning to "stop immediately". I again shipped it to the dealer in Cincinnati where it has been there since then (over 6 weeks now!) Talking to the dealer, they do not seem to be certain of what happened and keep changing things. I am not sure if I feel safe driving such a car or owning it beyond the warranty

May 12, 2022
NHTSA ID Number: 11464375
Incident Date May 11, 2022
Consumer Location PALM SPRINGS, CA
Vehicle Identification Number SADHD2S13K1****
I tried to move my Jaguar I-Pace car yesterday - totally unresponsive. Finally got a door to open; dash said the car had zero miles (it had 140 available when last shut off). Then got a "Charging System Fault" message. Dash info kept turning off. Car won't accept electricity to charge, charging panel lights kept flashing, then all the doors locked and the alarm went off, with no way to turn it off as the key fob didn't work. When I googled "charge system fault" it is a common problem causing major headaches. It happened to a neighbor too; another I-Pace, different year! This needs to be a recall so Jaguar will address this issue before their cars die, not after. Per the internet, Jaguar is sometimes taking weeks to fix this which is unacceptable.

February 18, 2022
NHTSA ID Number: 11452901
Incident Date February 18, 2022

Consumer Location BETHESDA, MD
Vehicle Identification Number SADHD2S18K1****
35mph limit road, moderate traffic, speed of 30-35mph suddenly car shows an error message on screen with regards to electrical fault of traction battery and reduced feel of brakes. On a contrary, brakes became extremely hard and unresponsive (zero braking efficiency) - car moving 30mph, no change in forward motion (minor jitter on the steering wheel), barely managed to change lane to avoid collision. If right lane would be occupied, that would be a certain collision with a car in front of me as I would have no place to bring the car to safety. Brake message cleared when the car stopped.

May 17, 2021
NHTSA ID Number: 11417426
Incident Date May 16, 2021
Consumer Location PALM SPRINGS, CA
Vehicle Identification Number SADHD2S15L1****
Was driving vehicle downhill on a small hill in Palm Springs when multiple error messages appeared in rapid succession on the information display, including 'traction battery fault - safe to drive with caution'. This was immediately followed by "pull over and stop the car" but before I had the chance to do so ALL the systems in the car ceased to operate and all electrical systems shut down. The breaks would not work, the steering would not work. I was still traveling down hill and unable to stop the car. The car continued for approximately 1/2 a mile and went through two stop signs. Fortunately it was early morning and there were no other vehicles, or pedestrians around, if there had been I would have been unable to avoid hitting them. My safety and that of any other driver or pedestrian who could have been on the road was seriously compromised. The car finally came to rest towards the bottom of the hill and I was able to exit the vehicle. Had this happened if I was traveling at speed on a freeway, I hate to contemplate the consequences. This same problem happened about 4 weeks ago, but fortunately the total shut down occurred while the car was stationery in my garage. The dealership towed the truck then and returned it to me a few days later, saying they had resolved all the issues - but clearly not. I have no confidence in the safety of this car. The dealer is collecting the car today to return it to the Jaguar dealership in Rancho Mirage.

April 22, 2021

24

NHTSA ID Number: 11413407
Incident Date February 25, 2021
Consumer Location DANA POINT, CA
Vehicle Identification Number SADHB2S15K1****
BRAKES FAILED, AND BATTERY DIED AT FULL SPEED IN A 35 MILE ZONE, LUCKILY SLIGHT UP SLOPE AND CAR CAME TO A HALT. COMPLETE BATTERY AND BRAKE FAILURE, THE WHOLE SYSTEM SHUT DOWN. NO ANSWERS FROM JAGUAR, JUST A BATTERY REPLACEMENT. AGAIN, BRAKES FAILED AT FULL SPEED!

April 20, 2021
NHTSA ID Number: 11413004
Incident Date June 19, 2019
Consumer Location SANTA FE, NM
Vehicle Identification Number SADHD2S16K1****
EV BATTERY CAUGHT FIRE AFTER VEHICLE HAD BEEN PARKED FOR 5 DAYS IN AN INTERIOR LEVEL OF AN OPEN AIR PARKING GARAGE. VEHICLE WAS A TOTAL LOSS.

March 6, 2022
NHTSA ID Number: 11455400
Incident Date December 6, 2021
Consumer Location TROY, MI
Vehicle Identification Number SADHD2S10N1****
This is an EV. Four times car stopped abruptly in the middle of the freeway. Everything was brought to the notice of dealership but still kept happening. This car has become a death trap for me and my family. I need immediate resolution for this case before something tragic happens.
March 6, 2021
NHTSA ID Number: 11399556
Incident Date November 17, 2020
Consumer Location VESTAVIA, AL
Vehicle Identification Number SADHD2S10K1****
ELECTRICAL MULTI-SYSTEM FAILURE INCLUDING BRAKING WHILE VEHICLE IN MOTION. BRAKES FAILED AND STEERING AFFECTED. ENTIRE WIRING HARNESS DEFECTIVE ON VEHICLE PER MANUFACTURER.

February 5, 2021
NHTSA ID Number: 11394809
Incident Date February 4, 2021
Consumer Location AUBURN, WA
Vehicle Identification Number SADHC2S18K1****
UPON DRIVING OUT OF OUR HOUSE TO TAKE KIDS TO SCHOOL THERE WAS AN ERROR MESSAGE ON DISPLAY. PRIOR TO THIS AN UPDATE WAS DONE TO THE VEHICLE. PRIOR TO UPDATE THE VEHICLE CHARGED BATTERY WITH A RANGE OF 234. AFTER THE 'UPDATE' WAS DONE 2 DAYS AGO THE BATTERY DID NOT FULLY CHARGE DESPITE BEING ON A SUPERCHARGER OVER 12 HOURS. THE CAR CHARGED ONLY TO ABOUT 160 AND THEN DISPLAYED THIS MESSAGE ON THE DISPLAY: VEHICLE NOT FULLY CHARGED. POWER CUT DETECTED.

March 16, 2020
NHTSA ID Number: 11318305
Incident Date March 6, 2020
Consumer Location WAHIAWA, HI
Vehicle Identification Number SADHD2S17K1****
2195 MILES, AND ONLY DRIVING IT FOR 60 DAYS. THANKFULLY I WAS DRIVING SLOWLY, WHEN THE CAR'S BRAKES STOPPED WORKING, THE CAR STARTED SHUDDERING VIOLENTLY. WHEN FINALLY WAS ABLE TO STOP CAR, THE I-PACE WOULD NOT GO INTO OR OUT OF GEAR, AND THE EMERGENCY PARKING BRAKE WOULD NOT RELEASE. INCREDIBLY SCARY. I CAN ONLY IMAGINE IF I HAD BEEN DRIVING ON THE HIGHWAY WHEN THE BRAKES FAILED.

November 30, 2019
NHTSA ID Number: 11282985
Incident Date November 22, 2019
Consumer Location ENCINO, CA
Vehicle Identification Number SADHC2S12K1****
MY 4-MONTH-OLD CAR'S BRAKES FAILED TO OPERATE WHILE TRAVELING AT 60MPH IN THE FAST LANE OF THE FREEWAY. FORTUNATELY I WAS ABLE TO TURN ON

26

HAZARD LIGHTS AND COAST ACROSS THE FREEWAY TO THE HARD SHOULDER WHERE THE CAR ROLLED TO A STOP. THE PROBLEMS BEGAN EARLIER IN THE DAY WHEN THE CAR REPORTED "REDUCED BRAKE PEDAL FEEL, OK TO DRIVE WITH CAUTION. LATER IN THE DAY A MESSAGE REPORTED "ASPC NOT AVAILABLE." AT THIS POINT I CALLED THE DEALERSHIP WHO ADVISED US TO BRING IT IN THE NEXT DAY. SOME TIME AFTER THIS ALERT WE RECEIVED A SERIES OF RAPID MESSAGES - "TRACTION CONTROL OFFLINE" "EMERGENCY BRAKING ASSIST OFFLINE - OK TO DRIVE WITH CAUTION" AND SEVERAL OTHERS WHICH I DON'T RECALL. THE FINAL WARNING WAS "GEAR BOX FAULT" - AT THIS POINT I THOUGHT IT WISE TO PULL OVER, BUT WHEN I TRIED TO USE THE BRAKES THERE WAS NO RESPONSE AT ALL. JUST A GRINDING, CRUNCHING FEELING UNDER THE BRAKE PEDAL. I TURNED ON HAZARD LIGHTS AND COASTED TO THE RIGHT LANE THROUGH FAST-MOVING TRAFFIC, AND THEN ONTO THE HARD SHOULDER. I BELIEVE THE REGENERATIVE BRAKING SYSTEM WAS WORKING AND THIS MANAGED TO SLOW THE VEHICLE TO A STOP. ON THE HARD SHOULDER I TURNED THE CAR OFF AND THEN ON AGAIN, BUT THE BRAKE PEDAL STILL HAD A GRINDING, CRUNCHING FEELING AND WOULD NOT OPERATE. THE PARK/DRIVE/NEUTRAL BUTTONS JUST FLASHED IF YOU PRESSED THEM. I WAS IN THE CAR WITH TWO CHILDREN UNDER 6 AND MY WIFE. WE WERE VERY CONCERNED AS THERE WAS VERY LITTLE SPACE AT THE SIDE OF THE ROAD AND NO WAY TO GET OFF THE FREEWAY. WE PRESSED THE CAR'S SOS BUTTON AND THE WOMAN ADVISED WE CALL 911 TO BE RESCUED BY THE POLICE. JAGUAR ROADSIDE ASSISTANCE SENT A TOW TRUCK TO TOW THE VEHICLE TO JAGUAR MONTEREY FOR REPAIR. A FEW DAYS LATER WE WERE TOLD THE CAR'S "POWER DISTRIBUTION BOX" HAD FAILED. THE CAR HAD NO OUTSTANDING RECALLS. WHEN PURCHASED IT HAD THE "ASPC NOT AVAILABLE" ERROR AND HAD TO GO BACK TO DEALER FOR REPAIR.

August 19, 2019
NHTSA ID Number: 11245059

Incident Date August 17, 2019
Consumer Location SPRING, TX
Vehicle Identification Number SADHD2S10K1****
SINCE I PURCHASED JAGUAR I-PACE I BEEN HAVING
BATTERY FAULT ISSUES WHICH NOW STANDARD ME WITH
THE VEHICLE. I RECEIVE BATTERY FAULT ERRORS AND
THE CAR STOPS WORKING. THE CAR STAYS ON BUT WHEN
YOU PUT THE CAR IN DRIVE OR REVERSE AND HIT THE GAS
PEDAL NOTHING HAPPENS. ITS VERY DANGEROUS AS THE
CAR SHOULD NOT JUST STOP FROM DRIVING WHEN YOU
HIT THE GAS. WHEN THIS HAPPENS THE CAR IS WORKING
IN TERMS OF AIR CONDITION, STEERING WHEEL ETC....
ALSO THERE IS CONSTANT ERRORS WHEN IT COMES TO
BLIND SPOT ALERT. THE VEHICLE TELLS YOU THEY ARE
DISABLED, IF YOU RESTART THE VEHICLE IT RESENTS BUT
COMES BACK. ALSO THE DASHBOARD SOMETIMES JUST
GOES BLANK AND WILL COME BACK A FEW MINUTES
LATER. ITS SCARY AS YOU SUDDENLY DONT KNOW HOW
FAST YOUR GOING OR WHAT IS GOING ON TILL THE SCREEN
COMES BACK FEW SECONDS LATER. THE VEHICLE HAS
BEEN AT THE DEALER FEW TIMES BUT STILL HAVING THE
SAME ISSUE. ITS CURRENTLY AT THE DEALER AGAIN TO BE
FIXED. THIS VEHICLE IS 100% ELECTRIC AND I'M
ATTACHING SOME PICTURES OF THE ERRORS.

May 17, 2021
NHTSA ID Number: 11417426
Incident Date May 16, 2021
Consumer Location PALM SPRINGS, CA
Vehicle Identification Number SADHD2S15L1****
Was driving vehicle downhill on a small hill in Palm Springs when
multiple error messages appeared in rapid succession on the
information display, including 'traction battery fault - safe to drive with
caution'. This was immediately followed by "pull over and stop the car"
but before I had the chance to do so ALL the systems in the car ceased
to operate and all electrical systems shut down. The breaks would not
work, the steering would not work. I was still traveling down hill and
unable to stop the car. The car continued for approximately 1/2 a mile
and went through two stop signs. Fortunately it was early morning and
there were no other vehicles, or pedestrians around, if there had been I

would have been unable to avoid hitting them. My safety and that of any other driver or pedestrian who could have been on the road was seriously compromised. The car finally came to rest towards the bottom of the hill and I was able to exit the vehicle. Had this happened if I was traveling at speed on a freeway, I hate to contemplate the consequences. This same problem happened about 4 weeks ago, but fortunately the total shut down occurred while the car was stationery in my garage. The dealership towed the truck then and returned it to me a few days later, saying they had resolved all the issues - but clearly not. I have no confidence in the safety of this car. The dealer is collecting the car today to return it to the Jaguar dealership in Rancho Mirage.

July 31, 2023
NHTSA ID Number: 11535550
Incident Date July 29, 2023
Consumer Location ELK GROVE VILLAGE, IL
Vehicle Identification Number SADHD2S11N1****
The contact owns a 2022 Jaguar I-Pace. The contact stated that the vehicle was taken to the dealer because the vehicle failed to charge as needed. The contact then received recall notification of NHTSA Campaign Number: 23V369000 (Electrical System). The vehicle was towed to the dealer where the recall was completed; however, the contact stated that while charging the vehicle, the garage and the vehicle overheated. The contact stated that the vehicle was extremely hot near the high voltage battery area. The contact was concerned that issue could cause a fire. No warning lights were illuminated. The vehicle was taken to the dealer however, the failure could not be duplicated. The vehicle was not repaired. The manufacturer was notified of the failure and the contact was provided a case number. No further assistance was provided. The failure mileage was approximately 27,000.

September 12, 2022
NHTSA ID Number: 11484095
Incident Date September 11, 2022
Consumer Location LOMA LINDA, CA
Vehicle Identification Number SADHD2S17N1****
While driving a 2022 Jaguar I-Pace for 60 miles, the car came to a stop sign near its destination. At this point, the car would stutter and shake when attempting to accelerate, simultaneously the car would roll back

since there was a slight decline in the road. Brakes were full functional throughout this time. However, no warnings were shown during the occurrence and by the time the driver was able to apply the brakes, the car had already rolled back approximately 2 feet. After this time, the car accelerated but the issue repeated itself at the next stop sign and again at the destination. While approaching a drive way at the destination with a 10-15% grade, the vehicle completely cut power halfway up the drive way. At this time the car rolled back into the street, approximately 6 feet, before the driver could react and apply brakes. Had there been someone standing or walking on the side walk at the end of the driveway, it would have resulted in severe injuries or even death. At the time, no vehicles were on the road, however if there were, the vehicle would have rolled into traffic before the driver is able to react. Power was regained approximately 10 seconds after rolling backwards. The vehicle was then parked curbside for approximately 4 hours. Upon starting and driving the vehicle again, the same issues with stuttering/shaking when accelerating from a standstill and sudden loss of power with any incline continued. The next day, the vehicle had to be towed to a Jaguar Land Rover dealer for investigation. No previous repair work or modifications have been done to the vehicle. All care and maintenance had been done according to the manual. Battery was also charged to 80% as recommended by the manual for optimal battery life. At the time the issues had started, the vehicle showed 48% battery life remaining. No previous issues or problems had occurred with the vehicle, no recalls or TSB in place as of 9/12/22 for the 2022 model year.

March 6, 2022
NHTSA ID Number: 11455400
Incident Date December 6, 2021
Consumer Location TROY, MI
Vehicle Identification Number SADHD2S10N1****
This is an EV. Four times car stopped abruptly in the middle of the freeway. Everything was brought to the notice of dealership but still kept happening. This car has become a death trap for me and my family. I need immediate resolution for this case before something tragic happens.

71.    JLRNA released manufacturer communications[1] to the National Highway Traffic Safety Administration related to the high voltage battery on February 12, 2019, February 13, 2019; February 21, 2019; March 6, 2019; March 12, 2019; May 3, 2019; November 12, 2020; February 18, 2021; October 13, 2021; March 13, 2023; and July 17, 2023. Each of these manufacturer communications relates to or is directed at symptoms of the same underlying Battery System Defect though, until 2024, JLRNA failed to direct any NHTSA manufacturer communication a the symptom "fire."

72.    On March 6, 2019, JLRNA released a service bulletin due to the high voltage auxiliary components failing with a short circuit, blowing fuses in the high voltage junction box, and blowing fuses in the battery energy module.

---

[1] "Federal regulations mandate that vehicle and vehicle equipment manufacturers comply with Early Warning Reporting requirements. One of the EWR requirements is that all manufacturers of motor vehicles or motor vehicle equipment, including low volume and child restraints, submit to NHTSA copies of their manufacturer communications. Manufacturers should submit all notices, bulletins, and other communications including warranty and policy extensions and product improvement communication sent to dealers, distributors, owners, purchasers, lessors, or lessees regarding any defect, failure or malfunction beyond normal deterioration in use, failure of performance, flaw or other unintended deviation from design specifications whether it is safety-related or not." https://www.nhtsa.gov/vehicle-manufacturers/manufacturer-communications, citing 49 CFR 579.21, *et seq.* and 49 CFR 479.5.

73.    The following slide was shared during a shop foreman conference call put on by JLRNA in 2019:

**Latest Vehicle Concern Fixes**



| Cell Module Imbalance | 19 & 20MY I-PACE |
|---|---|
| **Customer Voice:**<br>• Customer may experience various warnings & symptoms i.e. difficulties charging the vehicle, a Traction Battery Warning, or inability to start the vehicle, Reduced Performance Warning.<br><br>**Technical Description:**<br>• Various codes for Hybrid/EV Battery Cell Module XX- Signal failure.<br><br>**Status:**<br>• Run 40D2 test in the BECM. BECM ECU Function- HV Hot Spot Cell Module Data<br>• Results do not populate easily in the session file, take screen shots of the 40D2 test<br>• 40D2 Test will ask technicians to charge the vehicle for 10 minutes.  The test will still run if you are unable to charge the vehicle<br>• Prior to case submission, please have you designated EVSAP pressure the HV Battery | |

74.    The following PowerPoint slide was provided by JLRNA to NHTSA in 2020:

**TECHNICAL TOPICS**
**POWERTRAIN**

 

| Water Pump P2600-13 Stored in the PCM | 19/20MY I-PACE |
|---|---|
| **Customer Voice:**<br>– Vehicle cannot be put into gear out of park and/or an HV Battery warning is displayed on the instrument cluster.<br><br>**Technical Description:**<br>– P2600-13 "Coolant Pump "A" Control Circuit Open stored in the PCM.<br><br>**Status:**<br>– Please follow TOPIx Guidance as well as any guided flows available in PATHFINDER.<br>– Raise a TA if you require additional assistance.<br>– If diagnosis results is replacement of the Water Pump, please raise an EPQR for parts return. | |

PRINTED COPIES ARE UNCONTROLLED                                    32

32

75.    Despite ample evidence, JLRNA failed to initiate an investigation until February 2, 2022. JLRNA's investigation is incomplete. JLRNA could not determine an endpoint in affected vehicles.

76.    On May 18, 2023, JLRNA determined that it would conduct a recall (H441) of all I-Pace vehicles manufactured to date: all 2019-2024 Jaguar I-Pace vehicles ("Class Vehicles"). JLRNA's 573 report reflects that of the 6,422 potentially involved vehicles, 100% are estimated to have the defect, reported as: "Vehicles have experienced thermal overload which may show as smoke or fire that may occur underneath the vehicle where high voltage traction battery is located. Investigations are continuing."

77.    As stated in JLRNA's recall, owners of the Class Vehicles were at risk of "A vehicle thermal overload condition such as fire or smoke can result in increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage."

78.    The defect occurs during manufacture due a failure of materials or workmanship. The high voltage batteries systems in the Class Vehicles, like all batteries, contain an anode and a cathode. The anode and cathode are supposed to be separated at very precise dimensions by an electrolyte solution and a separator. The Class Vehicles have a torn separator and/or a bent anode tab, which permits contact between the anode and cathode resulting in a short. The short causes the fire, thermal

overload, and/or battery system malfunction and failure. The defect is a physical failure in the materials or in the manner of their assembly and cannot be remedied, nor does JLRNA suggest it is remedied, by the software update in recall H441. See demonstrative diagram below:



79.    The H441 recall expressly does not fix the defect nor prevent future battery failures. The recall simply provides software to anticipate when the defective battery system will catch fire. The recall will also limit the charging capacity to 75%. Class Vehicles cannot be parked or charged inside before or after having the recall performed. The recall expects that JLRNA's dealers may replace high voltage batteries "if necessary" but fails to convey what would render replacement necessary. Moreover, since the recall applies to 2024 vehicles that have not yet been sold or manufactured and specifically acknowledges that no endpoint has been identified, there is no reason to believe that a replacement battery will be less

dangerous.

80.    On September 8, 2023, a Class Vehicle supposed to have received the recall caught fire. Since, JLRNA has identified hundreds of Class Vehicles that had recall H441 incorrectly applied, which vehicles were made subject of recall H459.

81.    On October 26, 2023, JLRNA learned its recall software contained errors as to hundreds more Class Vehicles, which vehicles were added to H459.

## CLASS ALLEGATIONS

82.    Plaintiffs bring this class action on behalf of themselves and on behalf of the Class Members. Plaintiffs are informed and believe that the Class Vehicles are dangerous to drive and put drivers, passengers, and other motorists at risk of serious injury or death.

83.    Plaintiffs bring this lawsuit as a class action on behalf of and similarly situated individuals under Rule 23 of the Federal Rules of Civil Procedure.

84.    Plaintiffs Joyce and Jors bring this class action on behalf of themselves and all other similarly situated members of a proposed California-wide class ("California Class"), defined as follows:

> **All persons or entities in California who are current or former owners and/or lessees of 2019-2024 Jaguar I-Pace vehicles, and which were bought or used primarily for personal, family, or household purposes or bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are**

registered in California ("California Class Members").

85.    Plaintiff Venkatachala brings this class action on behalf of himself and all other similarly situated members of a proposed Texas-wide class ("Texas Class"), defined as follows:

> **All persons or entities in Texas who are current or former owners and/or lessees of 2019-2024 Jaguar I-Pace vehicles, and which were bought or used primarily for personal, family, or household purposes ("Texas Class Members").**

86.    Excluded from the Class are: (1) JLRNA, any affiliated parent or sister company, any entity or division in which JLRNA has a controlling interest, its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; (4) persons or entities with pending litigation against JLRNA related to a Class Vehicle; and (5) claims for personal injuries resulting from these facts. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclass, or modified in any other way.

87.    Plaintiff reserves the right to amend the Class, and to add subclasses, if discovery and further investigation reveals such action is warranted.

88.    **Numerosity:** Although the exact number of Class Members is uncertain and can be ascertained only through appropriate discovery, Plaintiff

36

believes, and on that basis alleges, that thousands of Class Vehicles have been sold and leased in California. Therefore, the number of Class Members is great enough that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in JLRNA's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of various states.

89.    **Typicality:** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, acquired for value (in Plaintiff's and some potential Class Members' case purchased, in other potential Class Members' case leased) a Class Vehicle designed, manufactured, and distributed by JLRNA in which the battery system was defective and there has been no remedy made available. The representative Plaintiff, like all potential Class Members, has been damaged by Defendant's misconduct, and is forced to own an unsafe and dangerous vehicle. Furthermore, the factual bases of Defendant's misconduct are common to all potential Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all potential Class Members, including Plaintiff.

90.    No violations alleged in this complaint depend on any individualized interaction of any kind between potential Class Members and JLRNA. Rather, all

claims here arise from the identical acts, omissions, concealments, and representations of JLRNA.

91. **Existence and Predominance of Common Questions of Fact and Law:** There are common questions of law and fact as to the potential Class Members that predominate over questions affecting only individual members, including but not limited to:

    a. Whether JLRNA engaged in unlawful, unfair, or deceptive business practices in selling Class Vehicles to Plaintiff and other potential Class Members;

    b. Whether JLRNA made false misrepresentations or omitted and concealed material facts related to the Class Vehicles it sold to potential Class Members;

    c. Whether the Class Vehicles and their battery systems are defectively designed or contain defective workmanship or defective materials and are manufactured such that they are not suitable for their intended use or were not of similar quality to other vehicles in the trade;

    d. Whether the fact that the Class Vehicles suffer from a battery system defect would be considered material by a reasonable consumer;

    e. Whether the fact that the Class Vehicles suffer from a defect that could cause fire or injury would be considered material by a reasonable consumer;

    f. Whether JLRNA profited from the sale of Class Vehicles containing the battery system defect;

    g. Whether JLRNA was aware of the battery system defect before the Class Vehicles were sold to potential Class Members;

    h. Whether JLRNA continues to sell Class Vehicles to consumers after

learning of the battery system defect;

i.  Whether JLRNA violated California Business and Professions code section 17200 *et seq.*;

j.  Whether JLRNA breached the express warranty it provided to potential Class Members;

k.  Whether JLRNA breached the implied warranty provided to potential Class Members;

l.  Whether Plaintiff and potential Class Members are entitled to equitable relief; and

m. Whether JLRNA's unlawful, unfair and/or deceptive practices harmed Plaintiff and potential Class Members.

92.   Plaintiff's claims are not only typical of all potential Class Members, but are identical.

93.   All of Plaintiff's claims and all potential Class Members' claims are based on exactly the same legal theories. Plaintiff's damages also mirror the damages suffered by all potential Class Members—viz., an injunction barring further sales of vehicles with the battery system defect, and monetary damages in the form of a buyback of the Class Vehicles. Further, Plaintiff has no interest antagonistic to, or in conflict with, those of the Class.

94.   **<u>Adequate Representation:</u>** Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member. Plaintiff has retained attorneys experienced in the prosecution of class actions and consumer claims similar to this matter. Plaintiff intends to prosecute this action vigorously.

95. **Predominance and Superiority:** Plaintiff and the potential Class Members have all suffered and will continue to suffer harm. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most potential Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual potential Class Members' claims, it is likely that only a few potential Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, potential Class Members will continue to incur damages, future consumers will buy defective vehicles, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

96. In sum, Plaintiffs will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent them and the Classes, common questions will predominate, and there will be no unusual manageability issues.

**FIRST COUNT**
**Violation of the Consumer Legal Remedies Act – Injunctive Relief**
**(On Behalf of California Plaintiffs and the Class)**

97.    Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

98.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the potential Class Members.

99.    Defendant JLRNA is a "Person" under California Civil Code section 1761(c).

100.   Plaintiff and potential Class Members are "consumers" under California Civil Code section 1761(d).

101.   The purchases and leases of Class Vehicles and the warranties issued to Plaintiff and potential Class Members constitute transactions as defined by California Civil Code section 1761(e).

102.   The Class Vehicles and warranties constitute "goods" or "services" as defined by California Civil Code sections 1761(a) and (b).

103.   Plaintiffs and potential Class Members bought or leased the Class Vehicles and warranties primarily for personal, family, and household purposes under California Civil Code section 1761(d).

104.   JLRNA's misrepresentations, active concealment, failure to disclose, and omissions regarding the Class Vehicles and violated the California Consumer

41

Legal Remedies Act, codified at California Civil Code section 1750 *et seq.*:

    a.  JLRNA misrepresented the Class Vehicles and warranties had characteristics, benefits, or uses that they did not have. Cal. Civ. Code § 1770, subd.(a)(5);

    b.  JLRNA misrepresented the Class Vehicles and warranties were of a particular standard, quality, or grade when they were of another. Cal. Civ. Code § 1770, subd. (a)(7);

    c.  JLRNA advertised, and continues to advertise, the Class Vehicles and warranties with inability and intent not to sell or lease them as advertised. Cal. Civ. Code § 1770, subd. (a)(9);

    d.  JLRNA misrepresented the Class Vehicles and warranties conferred or involved rights, remedies, or obligations that they did not. Cal. Civ. Code § 1770, subd. (a)(14); and

    e.  JLRNA misrepresented the Class Vehicles and warranties were supplied in accordance with previous representations when in fact they were not. Cal. Civ. Code § 1770, subd. (1)(16).

105.    JLRNA's unfair and deceptive acts or practices occurred repeatedly during JLRNA's course of trade and business. These practices were material, capable of deceiving a substantial portion of the purchasing public, and thus caused economic harm to purchasers and lessees of the Class Vehicles.

106.    JLRNA knew by Summer 2019, at the latest, and before the sale or lease of a Class Vehicle to Plaintiff, and many of the Class Vehicles, that the Class Vehicles contained an inherent battery system defect, were defectively designed or manufactured, manifested serious problems leading to fire or serious injury, and

were not suitable for their intended use.

107.   By Summer 2019 at the latest, JLRNA had exclusive knowledge of material facts about the existence of the battery system defect in its Class Vehicles. JLRNA actively concealed the battery system defect from Plaintiff and potential Class Members who purchased the Class Vehicles.

108.   JLRNA has failed to resolve the battery system defect to Plaintiff and potential Class Members.

109.   JLRNA has only instructed consumers to forgo essential features and functions of the Class Vehicles.

110.   JLRNA was under a duty to Plaintiff and potential Class Members to disclose the defective nature of the battery system, as well as any associated risks or costs they would have to bear and features they would have to forgo by purchasing a Class Vehicle. JLRNA was under this duty because:

   a. JLRNA was and is in a superior position to know the true state of the facts, and true nature of the battery system defect manifested in the Class Vehicles;

   b. Plaintiff and potential Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the battery system defect until symptoms of the defect, which can be catastrophic, manifested;

   c. JLRNA knew Plaintiff and potential Class Members could not have reasonably learned of or discovered the battery system defect until its manifestation.

43

111.   In failing to disclose the battery system defect, JLRNA knowingly and intentionally concealed material facts and breached its duty to avoid doing so.

112.   The facts concealed and not disclosed by JLRNA to Plaintiff and potential Class Members are material in that a reasonable consumer would have considered them to help decide whether to purchase or lease a Class Vehicle. A reasonable consumer would consider the battery system in an electric vehicle to be an essential and desirable quality of such a vehicle. Had Plaintiff and potential Class Members known that the Class Vehicles contained the battery system defect, they would not have purchased or leased a Class Vehicle.

113.   Plaintiff and potential Class Members are reasonable consumers. They did not expect their Class Vehicles to contain a battery system defect. It is reasonable for a consumer to expect that the battery system in an electric vehicle will not contain a defect that may lead to fire or serious injury, or any other defect that would prohibit them from using the vehicle.

114.   As a result of JLRNA's misconduct as described herein, Plaintiff and potential Class Members have been harmed and suffered actual damages in that the Class Vehicles should not contain a defective battery system that increases the risk of fire or serious injury. This threatens the safety of Class Members, their passengers, and other motorists.

115.   As a direct and proximate result of JLRNA's unfair and deceptive acts,

omissions, concealment, and practices, Plaintiff and potential Class Members have suffered, and will continue to suffer actual damages in that they continue to own a vehicle that they cannot use the way they expected to when they bought the Class Vehicles, and when they do, they run the risk of fire or serious injury with no remedy in sight.

116.   Plaintiff and potential Class Members are entitled to equitable relief.

117.   Under California Civil Code section 1780, subd. (a)(2), Plaintiff and potential Class Members seek an injunction prohibiting the acts set forth here which violate the Consumer Legal Remedies Act.

118.   Plaintiff seeks an order prohibiting Defendant, JLRNA, from engaging in the acts described in this Complaint and requiring JLRNA to do the following:

(1) Cease all sales of Class Vehicles to any persons or entities including sales to its California JLRNA dealerships of Class Vehicles;

(2) Issue a "Stop Sale" order to its California dealerships prohibiting the sales of any Class Vehicle to any member of the public;

(3) Take down advertisements for Class Vehicles or otherwise make abundantly clear to the general public on JLRNA's website and other advertising that Class Vehicles are subject to a defect that is not yet repairable;

(4) Toll the express warranty period for all Class Vehicles to cover, at a minimum, the time period during which the Class Vehicles have been recalled until a full remedy is developed that permits the Class Vehicles to permanently and safely operate with all functions consistent with California Civil Code section 1795.6.

45

(5) Repair Class Vehicles within 30 days of presentation under California Civil Code section 1793.4 or offer a repurchase of said vehicles under California Civil Code section 1794.

119.    JLRNA acted with malice, oppression, and fraud toward Plaintiff and potential Class Members under California Civil Code section 3294.

120.    Under California Civil Code section 1780(d), Plaintiff may recover attorney's fees and costs according to proof at trial.

## SECOND COUNT
### Violation of the Song-Beverly Consumer Warranty Act – Breach of Express Warranty
### (On Behalf of California Plaintiffs and Class Members)

121.    Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

122.    The Class Vehicles were sold to Plaintiff and potential Class Members with express warranties provided by JLRNA that the Class Vehicles would be free from defects in materials or workmanship during the applicable warranty period and that to the extent the Class Vehicles had defects, JLRNA would repair the defects.

123.    The Class Vehicles were delivered to Plaintiff and potential Class Members with serious defects and nonconformities under the warranty and developed other serious defects and nonconformities under the warranty.

124.    Under the Song-Beverly Consumer Warranty Act ("SBA"), California Civil Code sections 1790 *et seq.* the Class Vehicles are subject to the Act and were

used for purposes covered by the Act.

125.   Plaintiff and Class Members are "buyers" under the SBA.

126.   JLRNA is a "manufacturer" and/or "distributor" under the SBA.

127.   The above defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value and/or safety of the Vehicle.

128.   Plaintiff and potential Class Members delivered the Class Vehicles to the repair facilities of JLRNA for repair of the nonconformities or, because of the lack of repair available, Class Members did not deliver the Class Vehicles for repair as it would have been futile.

129.   JLRNA, through its repair facilities, were unable to and/or refused to conform the Class Vehicles to the applicable express warranties after a reasonable number of repair attempts, and/or within a reasonable time, and/or within 30 days and expressly advised Plaintiff and potential Class Members that further attempts to repair their vehicles would be futile as JLRNA did not have a fix for the defective battery system.

130.   JLRNA has failed to provide its representatives (JLRNA authorized dealers) for purposes of warranty repairs sufficient literature and parts to effect repair to the class vehicles. JLRNA is required to do so under California Civil Code § 1793.2(a)(3)

131.    Notwithstanding JLRNA's failures to comply with various provisions of the SBA and Plaintiff's and potential Class Members' entitlement, JLRNA failed to either promptly replace or repurchase the Class Vehicles in accordance with the SBA.

132.    By failure of Defendant JLRNA to remedy the defects as alleged above, or to repurchase or replace the Class Vehicles, Defendant JLRNA has breached its obligations under the Act.

133.    Under the SBA, Plaintiff and potential Class Members are entitled to damages under California Civil Code sections 1793.2 and 1794 *et seq*.

134.    Plaintiff and potential Class Members are entitled to recover all incidental and consequential damages pursuant to 1794 *et seq*. and California Commercial Code sections 2714 and 2715 *et seq.*

135.    Plaintiff and potential Class Members are entitled under the SBA to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

136.    Plaintiff is entitled to prejudgment interest under California Civil Code section 3287.

**THIRD COUNT**
**Violation of the Song-Beverly Consumer Warranty Act – Breach of Implied Warranty**
**(On Behalf of California Plaintiffs and Class Members)**

137.    Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

138.    JLRNA is the "manufacturer," "distributor," and/or "retail seller" of the Class Vehicles and JLRNA's obligation under the implied warranties is either direct or by law pursuant to California Civil Code section 1795.

139.    Each Class Vehicle included an implied warranty that the Class Vehicles were merchantable under California Civil Code section 1792.

140.    The Class Vehicles were not fit for the ordinary purpose for which such goods are used because it was equipped with defects in the battery system.

141.    The Class Vehicles were not of the same quality as those generally acceptable in the trade because they were equipped with defects in the Class Vehicle's battery system causing risk of fire and serious injury.

142.    The Class Vehicles did not match the promises or facts stated on the label of the car; namely that it was and would operate as an electric vehicle with a stated mileage range at full charge.

143.    Plaintiff and potential Class Members are entitled to justifiably revoke acceptance of the Class Vehicles under California Civil Code section 1794 *et seq*.

144.    Plaintiff and potential Class Members revoke acceptance of the Class

Vehicles.

145.   Under the Act, Plaintiff and potential Class Members are entitled to damages under California Civil Code sections 1793.2 and 1794 *et seq*.

146.   Plaintiff and potential Class Members are entitled to recover all incidental and consequential damages under California Civil Code section 1794 *et seq*. and Commercial Code sections 2714 and 2715 *et seq*.

147.   Plaintiff and potential Class Members are entitled under the SBA to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

148.   Plaintiff is entitled to prejudgment interest under Civil Code section 3287.

### **FOURTH COUNT**
**Violation the Unfair Business Practices Act – Cal. Bus. & Prof. Code §§ 17200 *et seq*.**
**(On Behalf of California Plaintiffs and Class Members)**

149.   Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

150.   Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the Unfair Business Practices Act. Cal. Bus. & Prof. Code, section 17200 *et seq*. ("UCL"). Such violations of the UCL result from unlawful, unfair or fraudulent business acts and

practices. A causal connection exists between JLRNA's business practices and the alleged harm in that JLRNA's conduct caused or was likely to cause substantial injury to Plaintiff and potential Class Members.

### JLRNA's Unfair Business Acts and Practices

151.    JLRNA's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further JLRNA's legitimate business interests, other than the described conduct. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

152.    Plaintiff and potential Class Members' injuries are: (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition; and, (3) not injuries that consumers themselves could reasonably have avoided.

153.    Here, JLRNA's conduct has caused and continues to cause substantial injury to Plaintiff and potential Class Members. Plaintiff and potential Class Members have suffered injury in fact due to JLRNA's decision to knowingly sell defective Class Vehicles, with no remedy or fix available for the known defect.

JLRNA's conduct has caused substantial injury to Plaintiff and potential Class Members.

154.   JLRNA's conduct as alleged herein solely benefits JLRNA while providing no benefit of any kind to Plaintiff or potential Class Members. Such deception used by JLRNA convinced Plaintiff and potential Class Members that the Class Vehicles were of a certain value and price to induce them to spend money on the Class Vehicles. Knowing that Class Vehicles were not of a suitable quality to be sold, because of the defective battery system, JLRNA unfairly profited from their sale. The injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

155.   The injuries suffered by Plaintiff and potential Class Members are not injuries that they could reasonably have avoided. After JLRNA falsely represented the quality of the Class Vehicles, Plaintiff and potential Class Members suffered injury in fact due to their subsequent purchase and/or lease of the defective Class Vehicles. JLRNA failed to take reasonable steps to inform Plaintiff and potential Class Members that the Class Vehicles were in a potentially permanently defective condition due to the defects with the battery system. As such, JLRNA leveraged its position of power and its superior (and singular) knowledge to deceive Plaintiff and potential Class Members to buy the Class Vehicles. The injury suffered by Plaintiff and potential Class Members are not injuries that they could reasonably have

avoided.

156.  JLRNA's conduct violated the "unfair" prong of section 17200.

## JLRNA's Fraudulent Business Acts and Practices

157.  JLRNA's fraudulent business acts and practices were likely to and did deceive members of the public.

158.  Plaintiff and potential Class Members were not only likely to be deceived, but in fact were deceived by JLRNA. Plaintiff and potential Class Members agreed to buy or lease Class Vehicles assuming that they would be free from battery system defects that could lead to fire and serious injury, when in fact they were not. Plaintiff's and potential Class Members' reliance on JLRNA's deceptive statements is reasonable due to the unequal bargaining power between JLRNA and Plaintiff and potential Class Members as well as JLRNA's superior knowledge. It is likely that JLRNA's fraudulent business practice would deceive members of the public at large.

159.  JLRNA deceived Plaintiff and Class Members by falsely representing the Class Vehicles as having merchantable, suitable quality. This conduct satisfies the "fraudulent" element of UCL section 17200.

## JLRNA's Unlawful Business Acts and Practices

160.  JLRNA deceived Plaintiff and potential Class Members by representing the Class Vehicles to be of a certain, non-defective, quality, and unfairly deceived

Plaintiff and potential Class Members by representing that the Class Vehicles were suitable for sale, when JLRNA knew that they were not.

161.   JLRNA used misrepresentations and concealments of material facts to induce Plaintiff and potential Class Members to buy the Class Vehicles, in violation of UCL section 17200. Had JLRNA not misrepresented the quality of the Class Vehicles, Plaintiff and potential Class Members would not have purchased the Class Vehicles. JLRNA's conduct caused and continues to cause economic harm to Plaintiff and potential Class Members.

162.   The misrepresentations and concealments by JLRNA were "unlawful" business practices or acts under UCL section 17200. JLRNA's business practices violated, *inter alia*, California Civil Code sections 1709,1710, 1711, 1770, 1791.1, 1792, 1793.2, 1794, and 49 USC §§ 30118-9, 30166.

163.   JLRNA has engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against JLRNA.  Under UCL section 17203, Plaintiff and potential Class Members seek an order requiring JLRNA to immediately cease its unlawful, unfair, and fraudulent business practices, and requiring JLRNA to correct its actions. No adequate remedy at law exists to address JLRNA's ongoing and future violations.

## FIFTH COUNT
### Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of California and Texas Plaintiffs and Class Members)

164.    Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

165.    Plaintiffs brings this clam on behalf of themselves and on behalf of potential Class Members.

166.    Every contract in the State of California has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of the contract's express terms.

167.    Plaintiff and potential Class Members have complied with and performed all conditions of the contract.

168.    JLRNA breached the implied covenant of good faith and fair dealing by failing to inform Plaintiff and potential Class Members of the battery system defect affecting the Class Vehicles and failing to properly repair this defect. JLRNA's bulletins, special service messages, and other manufacturer communications leading up to and including the H441 recall concealed the true nature and severity of the Battery System Defect and provided at best, only nominal remedies representing the cheapest possible temporary symptom management intended to suppress or conceal the Battery System Defect until after the expiration of the battery system's warranty.

169.   JLRNA acted in bad faith and/or with malicious motive in denying Plaintiff and potential Class Members the full benefit of their bargain as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## SIXTH COUNT
**Breach of Express Warranties**
**[Tex. Bus. & Com. Code § 2.313]**
**(On Behalf of Texas Plaintiff and Class Members)**

170.   Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

171.   JLRNA is and was at all relevant times a merchant with respect to the Class Vehicles pursuant to Texas law (Tex. Bus. & Com. Code § 2.104.)

172.   In the course of selling its vehicles, JLRNA expressly represented in writing that the Class Vehicles were covered by a warranty against defects in material or workmanship, and that the warranty covered parts and labor charges for the repair or replacement of such defective parts.

173.   JLRNA breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by JLRNA. JLRNA has not repaired or adjusted the Class Vehicles materials and workmanship defects as promised.

174.   The warranties were breached because the Class Vehicles are not operational, safe, or reliable, nor did they comply with the warranties expressly made

to purchasers. JLRNA did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

175.   Furthermore, the warranties fail in their essential purpose because they are insufficient to make Plaintiff and the Class Members whole and because JLRNA failed and/or refuses to adequately provide the promised remedies within a reasonable time.

176.   Accordingly, recovery by Plaintiff is not limited to the warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

177.   Also, as alleged in more detail herein, at the time that JLRNA warranted and sold the Class Vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles' inability to be used in standard conditions. Plaintiffs and the Class were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable as a matter of law.

178.   JLRNA' actions, as set forth above, constitute breach of express warranties in violation of the laws of Texas (Tex. Bus. & Com. Code § 2.313).)

179.   JLRNA was provided adequate legal notice of these issues by numerous claims, including numerous warranty claims, technical assistance cases, and direct communications by Plaintiff and other members of the Class before or within a reasonable amount of time after Plaintiff and the Class members purchased their Class Vehicles.

180.   As a direct and proximate result of JLRNA' breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

<u>Revocation</u>

181.   Due to JLRNA' breach of warranties as set forth herein, Plaintiff and the Class request as an additional and/or alternative remedy, as set forth in Tex. Bus. & Com. Code section 2.711, a revocation of acceptance of the goods, and a return to Plaintiff and the Class of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Tex. Bus. & Com. Code sections 2.711 and 2.608.

**SEVENTH COUNT**
**Breach of Implied Warranties**
**[Tex. Bus. & Com. Code § 2.104]**
**(On Behalf of Texas Plaintiff and Class Members)**

182.   Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

183.   JLRNA is and was at all relevant times a merchant with respect to the

Class Vehicles pursuant to Texas law (Tex. Bus. & Com. Code § 2.104.)

184.   A warranty that the Class Vehicles were in merchantable condition was implied in law in the transactions, pursuant to Texas law (Tex. Bus. & Com. Code § 2.104.)

185.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles are inherently defective in that their battery is defective.

186.   JLRNA was provided notice of these issues by the numerous claims, individual letters and communications sent by Plaintiffs and members of the Class before or within a reasonable amount of time of purchasing the Class Vehicles. Plaintiffs and Class members have had sufficient direct dealings with JLRNA or its agents (dealerships) to establish privity of contract. Notwithstanding this, privity is not required in this matter because Plaintiffs and Class members are intended third party beneficiates of contracts between JLRNA and its dealers; specifically, they are the intended beneficiaries of JLRNA' implied warranties. Finally, privity is also not required because Plaintiff's and Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities. Moreover, there is, in fact, direct contractual privity between JLRNA and Plaintiff and the Class Members by virtue of the warranty contract.

187.   As a direct and proximate result of JLRNA' breaches of the implied warranties of merchantability and fitness for a particular purpose, pursuant to the laws of Texas (Tex. Bus. & Com. Code § 2.314), Plaintiff and the Class members have been damaged in an amount to be determined at trial.

188.   Plaintiff and Class members are entitled to recover damages as provided by statute, costs, attorneys' fees, rescission, restitution and other relief as is deemed appropriate pursuant to the laws of Texas.

## EIGHTH COUNT
### Violation of Texas Deceptive Trade Practices Act
### (On Behalf of Texas Plaintiff and Class Members)

189.   Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

190.   Texas Business and Commerce Code section 17.50 *et seq*., is part of Texas' Deceptive Trade Practices-Consumer Protection Act ("DTPA") and provides in relevant part:

(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) The use or employment by any person of a false, misleading, or deceptive act or practice that is;

(2) breach of an express or implied warranty; [or]

(3) any unconscionable action or course of action by any person . . . .

60

191.   In doing the acts alleged above, Defendant breached implied warranties, in violation of Texas Business and Commerce Code section 17.50(a)(2).

192.   In committing the acts alleged above, JLRNA also engaged in an unconscionable action or course of action, in violation of Tex. Bus. & Com. Code section 17.50(a)(3). Specifically, JLRNA engaged in acts or practices which, to Plaintiff and Class Members' detriment, took advantage of the lack of knowledge, ability, experience or capacity of Plaintiff and Class Members to a grossly unfair degree. Defendant's unconscionable actions and courses of action include but are not limited to misrepresenting and deceiving customers into believing they were purchasing Class Vehicles with fully operable batteries, when in fact, JLRNA failed to disclose or remedy, and misrepresented that the Class Vehicles had defective batteries, rendering the vehicles less than fully operable, and which greatly impacts the use and safety of the vehicles.

193.   JLRNA knew at the time that they made their representations and omissions that they were false. Nevertheless, JLRNA took advantage of Plaintiff's and the Class Members' lack of knowledge by aggressively marketing the Class Vehicles and inducing Plaintiff and Class members to purchase them.

194.   JLRNA also engaged in an unconscionable action or course of action by engaging in acts or practices which, to Plaintiff's and Class members' detriment, resulted in a gross disparity between the value received and the consideration paid

for the Class Vehicles, since JLRNA represented that the Class Vehicles were of merchantable quality and fit for ordinary purposes but, in truth, the Class Vehicles were defective and not of merchantable quality, in light of the consideration paid.

195.   In committing the acts alleged above, JLRNA also engaged in the following acts set forth in Tex. Bus. & Com. Code section 17.46, among others, which provides in pertinent part:

(a) False, misleading, or deceptive acts or practices in the failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would conduct of any trade or commerce are hereby declared unlawful . . .

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts: ...

(5) representing that goods or services have ... characteristics, ... [or] benefits ... which they do not have; . . .

(7) representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another; . . .

(9) advertising goods or services with intent not to sell them as advertised; . . .

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

196.   Plaintiff and Class members relied on JLRNA's conduct to their detriment. As set forth above, JLRNA acknowledges in their own bulletin that the Class Vehicles had defective batteries. JLRNA knew the Class Vehicles were defective, which was not known by Plaintiff or Class members at the time of sale. JLRNA had reason to know at the time of sale that the Class Vehicles were required for a particular purpose and that Plaintiff and Class members who purchased Class Vehicles were relying on JLRNA's skill or judgment to select or furnish Vehicles of merchantable quality.

197.   Plaintiff and Class Members have sustained "economic damages" as defined in the DTPA as a result of JLRNA's violations of the DTPA.

198.   Plaintiff and Class Members are entitled to restitution of the money that Defendants acquired in violation of the DTPA.

199.   JLRNA's conduct was committed "knowingly" as that term is defined in section 17.45(9) in that JLRNA had actual awareness at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice

giving rise to Plaintiff's and Class Members' claims, or, with respect to JLRNA's breach of implied warranty, JLRNA had an actual awareness of the act, practice, condition, defect, or failure constituting the breach of warranty.

200.   JLRNA's conduct was committed "intentionally" as that term is defined in section 17.45(13) in that Defendants had an actual awareness of the falsity, deception, or unfairness of the act or practice, or the condition, defect, or failure constituting a breach of warranty giving rise to Plaintiff's and Class Member's claims, coupled with the specific intent that Plaintiff and Class Members act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

201.   Plaintiff seeks an order under section 17.50(b)(2) enjoining JLRNA from further employing the practices described in this complaint against any Texas resident, and ordering JLRNA to recall defective Class Vehicles for purposes of retrofitting them with operational batteries, as well as an order for restitution, attorneys' fees and costs.

### NINTH COUNT
**Violation of Magnuson Moss Consumer Warranty – Written Warranty**
**(On Behalf of California and Texas Plaintiffs and Class Members)**

202.   Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

203.   JLRNA is a person engaged in making a consumer product directly or

indirectly available to consumers and gives a written warranty with respect to those products and is thus a "supplier" and "warrantor" under 15 U.S.C. § 2301(4) & (5).

204.   Plaintiffs are purchasers of a consumer product who received their Class Vehicles during the duration of a written warranty period applicable to the Class Vehicles and who are entitled by the terms of the written warranty to enforce against JLRNA the obligations of said warranty.

205.   The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("Warranty Act") is applicable to Plaintiff's Complaint in that the Class Vehicles were manufactured, sold and purchased after July 4, 1975, and costs in excess of ten dollars ($10.00).

206.   JLRNA warranted, in writing, that the Class Vehicles were of high quality and, at minimum, would actually work properly. JLRNA also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

207.   Plaintiffs' and all Class Members' purchase of the Class Vehicles were accompanied by JLRNA's written warranties for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the Class Vehicles, to repair the Class Vehicles, or take other remedial action free of charge to Plaintiffs and the Class Members with respect to

the Class Vehicles in the event that the Class Vehicles failed to meet the specifications set forth in said undertaking.

208.   Said warranties were the basis of the bargain of the contract between the Plaintiffs and Class Members and JLRNA for the sale of the Class Vehicles to Plaintiffs and the Class Members.

209.   Said purchase of the Class Vehicles was induced by, and Plaintiffs and the Class Members relied upon, these written warranties.

210.   Plaintiffs and the Class Members have met all of their obligations and preconditions as provided in the written warranties.

211.   JLRNA breached its warranties by selling to Plaintiffs and the Class Members the Class Vehicles with known battery problems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly, and cause a fire or injury.

212.   As a direct and proximate result of JLRNA's failure to comply with its express written warranties, Plaintiffs and the Class Members have suffered damages and, in compliance with 15 U.S.C. § 2310(d), Plaintiffs are entitled to bring suit for such damages and other equitable relief.

## TENTH COUNT
### Violation of Magnuson Moss Consumer Warranty – Implied Warranty
### (On Behalf of California and Texas Plaintiffs and Class Members)

213.   Plaintiffs incorporate by reference each and every allegation contained

in the preceding and succeeding paragraphs as though fully restated and re-alleged.

214.  The Class Vehicles purchased by Plaintiffs and the Class Members were subject to an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7) running from the Manufacturer to the intended consumer, Plaintiffs and the Class Members herein.

215.  JLRNA is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiffs and the Class Members.

216.  JLRNA is prohibited from disclaiming or modifying any implied warranty by making a written warranty to the consumer.

217.  Under 15 U.S.C. § 2308, the Class Vehicles were impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the Class Vehicles were intended.

218.  The Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

219.  The above described defects in the Class Vehicles render the Class Vehicles unfit for the ordinary and essential purpose for which the Class Vehicles were intended.

220.   As a result of the breaches of implied warranty by Manufacturer, Plaintiffs and Class Members have suffered and continue to suffer damages.

221.   Plaintiff Joyce paid over $75,000 for the Joyce vehicle.

222.   Plaintiff Jors paid over $75,000 for the Jors vehicle.

223.   Plaintiff Venkatachala paid over $75,000 for the Venkatachala vehicle.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all others similarly situated prays as follows:

1)    For an award of actual, general, special, incidental, statutory, compensatory, and consequential damages on claims brought under California's Unfair Competition Law, breach of express and implied warranties under all relevant statutes, and breach of the implied covenant of good faith and fair dealing and in an amount to be proven at trial;

2)    For a Temporary Restraining Order and a Preliminary Injunction:

a)    enjoining JLRNA from continuing to sell Class Vehicles containing the battery system defect to its California JLRNA dealerships;

b)    Directing JLRNA to issue a "Stop Sale" order to its California dealerships prohibiting the sales of any Class Vehicle to any member of the public;

c)    Directing JLRNA to take down advertisements for Class Vehicles or otherwise make abundantly clear to the public on JLRNA's website and other

advertising that Class Vehicles are subject to a defect that is not yet repairable that makes the vehicle dangerous;

d)    Directing JLRNA to toll the express warranty period for all Class Vehicles to cover, at a minimum, when the Class Vehicles have been recalled until a full remedy is developed that permits the Class Vehicles to permanently and safely operate with all functions consistent with California Civil Code section 1795.6;

e)    Directing JLRNA to repair Class Vehicles within 30 days of presentation under California Civil Code section 1793.4 or offer a repurchase of said vehicles under California Civil Code section 1794;

3)    For an order certifying this action as a class action;

4)    For an order appointing Plaintiffs as Class Representatives of their classes and their counsel as Class Counsel;

5)    For attorney's fees;

6)    For prejudgment interest;

7)    For costs of suit;

8)    For an order requiring JLRNA to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

9)    For punitive damages; and

10)    For all other relief the court may deem necessary and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs on behalf of themselves and others similarly situated, demand trial by jury in this action under Rule 23(b) of the Federal Rules of Civil Procedure.

Dated: December 23, 2024

Respectfully Submitted,

By: *s/ Robert A. Magnanini*
Robert A. Magnanini, Esq.
**STONE & MAGNANINI LLP**
400 Connell Drive, Suite 6200
Berkeley Heights NJ, 07922
Tel: (973) 218-1111
Rmagnanini@smcomplex.com

Richard M. Wirtz, Esq. (*Admitted Pro Hac Vice*)
Daniel Z. Inscore, Esq. (*Admitted Pro Hac Vice*)
Alana L. Mellgren, Esq. (*Admitted Pro Hac Vice*)
**WIRTZ LAW APC**
4370 La Jolla Village Drive, Suite 800
San Diego, CA 92122
Telephone: (858) 259-5009
eservice@wirtzlaw.com;
rwirtz@wirtzlaw.com

Mark O'Connor, Esq. (*Pro Hac Vice Forthcoming*)
**O'CONNOR LAW GROUP, LLC**
384 Forest Avenue Suite 17
Laguna Beach, CA 92651
Telephone: (949) 494-9090
moconnor@teamolg.com

Todd M. Friedman, Esq. (*Pro Hac Vice Forthcoming*)
**LAW OFFICES OF TODD M. FRIEDMAN, PC**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
tfriedman@toddflaw.com

*Attorneys for Plaintiffs Sharon Joyce, Nancy Jors, and Vikas Venkatachala*